## JOSEPH MORA MOSS v. CHARLES SHEAR.

MESNE PROFITS—VALUE OF IMPROVEMENTS.—A defendant in ejectment who desires to set off the value of his improvements against the mesne profits, must assert his right by proper averments in his answer, or he is precluded from doing so at the trial.

TAX DEEDS—STRENGTHENING TITLE.—One who is under any legal or moral obligation to pay taxes cannot, by neglecting to pay the same and allowing the land to be sold in consequence of such neglect, add to or strengthen his title either by purchasing at the sale himself, or by suffering a stranger to buy and then purchasing from him.

SAME.—One who is under no legal or moral obligation to pay taxes is not precluded from purchasing at the tax sale, although in possession at the time the assessment was made or when the land was sold.

ASSESSMENT FOR TAXES—VALIDITY OF.—Under the Revenue Act of 1854, if lands were assessed to unknown owners, the Assessor must have stated in his list that the land was so assessed, because it was unoccupied and the owner was unknown, or the assessment created no charge upon the land, and no legal obligation was imposed on any one to pay the taxes.

SAME.—In order to impart any validity to the acts of an Assessor, the provisions of the statute must be strictly followed, and all its conditions fully complied with by him.

CHANGE OF COUNTY BOUNDARIES—LIEN OF TAX.—When, by a change of county boundaries made after land has been assessed for taxes, it falls into another county, the lien of the tax on the land still continues, and the Tax Collector of the old county may enforce the collection of the tax by sale.

TAX DEED—RECITALS OF.—It was not necessary under the Revenue Act of 1854 to recite in a tax deed the various acts showing a compliance on the part of the revenue officers with the several conditions of the statute. These acts, if inserted in the deed, are prima facie evidence; but if not inserted, may be proved aliunde.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

George Cadwalader, for Appellant.

· The plaintiff proves that at the time of the assessment the Bernals were the owners of the premises; that they failed to pay the taxes due; and that one William M. Lent purchased the premises, and thereby discharged the debt due by the Bernals to the State, and that as an equivalent therefor Lent received a conveyance of the property, which the Legislature, by the ninetieth section of the Revenue Law of 1854,

declared should be "*prima facie* evidence in all the Courts of this State of the conveyance of all the right, title, and interest in and to said property owned by the delinquent or delinquents at the time of the assessment."

The delinquents in this case were the unknown owners—the owners who in two ways had tried to evade the effect of the revenue law by neglecting to furnish the property as their own to the Assessor, and by refusing to pay the taxes when due.

The law, section sixty-four, enjoins the owner to pay the taxes upon his real estate, and goes so far as to declare that when the same are paid by the occupant he may recover the amount paid by action against the owner.

The same law, section seventy-six, says:

"In the same manner every person shall deliver up to the Assessor a just and true list of all property taxable by law."

While section eighty-two declares that:

"If the owner or owners of any property liable to taxation shall be unknown, or a non-resident, or absent, or refuse when called upon by the Assessor or his authorized deputy to give a list of his property, real or personal, subject to taxation, it shall be the duty of the Assessor or his authorized deputy in either or all the above enumerated cases, to make a list thereof from the best information he can obtain, and attach thereto such valuation as he may deem just, and enter the same upon his roll, *and the assessment thus made shall have the same force and effect as though it had been made by the owner or owners of all the property thus listed.*"

Again: we say, the owner having failed or refused to list his property—and the Assessor having listed it to unknown owners—such assessment, by force of the statute just cited, gave it the same force and effect against the property as if its owner had performed his duty to the State.

The land was in San Mateo County at the time of the assessment, and remained there until the 18th of April, 1857.

From such premises respondent's counsel argues that the Tax Collector of San Mateo County had no authority to sell

the land for the delinquent tax, it being in San Francisco County.

This we deny, for Blackwell, in his work on Tax Titles, observes, page 345:

"Where, after an assessment is made, the county in which the proceeding is had is divided, the Collector of the old county has power to sell land lying in the territory embraced in the newly created county. This is in conformity with the general principles of law in analagous cases." (9 Watts & Sergeant, 80; 5 Watts, 87; 6 Watts, 435; 16 Ohio, 466; 17 Ohio, 135; 16 Mass. 86; 4 Mass. 389; 6 J. J. Marsh, 147; 4 Halstead, 357.)

It is contended by respondent's counsel that under the Revenue Law of 1854, an assessment of occupied lands to *unknown owners*, the State gets no lien on the land, and that a tax sale thereof would be void. We do not read the law so, nor do we believe such to be its spirit and intention. The question does not arise in this case, because there is no proof that the land was occupied at the date of the assessment; and because, as we have already seen, the Legislature of 1857 legalized the assessment. Yet, the proposition being argued by respondent's counsel, we submit the following remarks in regard thereto:

Under some of the old tax systems, (nearly all,) taxes were a personal charge, which some States enforced by confinement of the body, or seizure of the personal property of the delinquent, whose defenses were that the assessments were not in fact against him, and if they were that they were improperly made; and as they generally succeeded, to the great injury of the State, a new system was devised which made the tax upon real estate become a direct lien upon the same, only extinguishable by payment of the tax, either by a sale of the property or otherwise—and under it the question came up again whether an assessment to the wrong owner, or to no owner, exonerated the land from the tax. There is no doubt but what an assessment to the wrong owner, or no owner, releases the true owner from all personal obligation to pay the

tax, but not the land. (*Strauch* v. *Schoonmaker*, 1 Watts & Serg. 166; *Smith* v. *Northampton Bank*, 4 Cushing, 1; 10 Wendell, 346; 8 Ohio, 539; 20 Ohio, 556.)

Even under statutes that require Assessors to list land to the owner thereof, an assessment to the wrong owner is valid, without it is proved "*aliunde*" that the name of the true owner was known to the officer. (Blackwell on Tax Titles, 175; 6 N. H. 182; 1 Foster, 400; 13 Illinois, 716.)

In 3 Richardson, Law 27, the tax execution recited an assessment against "*the estate of Mrs. Hammond.*" This was the only informality in the proceedings, and it was insisted that the warrant ought to express upon its face the name of some person liable for the tax; that the heirs—if Mrs. Hammond were so liable in this instance—and their names ought to have been inserted. The Court held the execution valid.

*H. O. Beatty*, also for Appellant.

*John B. Felton*, for Respondent.

This case of *Blakely* v. *Beston*, 13 Ill. 714, upon which the appellant rests his whole argument, and from which he quotes the doctrine that "it does not necessarily follow that because a person is in possession of premises he is bound to pay the taxes assessed upon them," as well as the obvious corollary that in such case the tax deed should be admitted, and the holder thereof be permitted to show that though in possession he was under no obligation to pay, is certainly no authority for a case where the revenue law, as in 1854, imposed absolutely on the occupant the obligation to pay, the owner, as here, being unknown. We insist that under the law of this listing, the defendant, the party in possession, was necessarily bound to pay the taxes, and hence that he could not by any evidence remove that obligation.

It is true that in this case the land was not actually listed to the defendant, as it should have been, but was listed to "unknown owners;" but this cannot avail the defendant. It appears in proof, and is admitted by appellant in his brief,

that the defendant was in possession; it could not, then, have been properly listed to "unknown owners." Section sixty-five provides: "*Unoccupied* lands shall be listed in the name of the owner if known—otherwise as lands of persons unknown." It is only unoccupied lands that can be listed to "unknown owners." If, therefore, the defendant attempts to avoid the obligation to pay the taxes by appealing to the listing as not to himself, but to unknown owners, he meets a more hopeless difficulty; for the land being actually occupied was improperly listed to unknown owners, and his tax sale is void on that account. Thus, it appears that the defendant is attempting to take advantage either of his own wrong or of the wrong of the Assessor; for if the Assessor had done his duty the land would have been listed to him and be liable for the taxes; his only excuse for not paying them is that the Assessor did not list them to him, as we see he should have done. Inevitably, therefore, if the tax sale is not inoperative and void as to himself, because of his own neglect of duty, it is void altogether, because of the Assessor's neglect of duty.

We insist, therefore, that to have admitted the deed would have been error, because it was apparent to the Court that the defendant could not possibly have claimed title under it. No proof could have given validity to the deed. It seems hardly necessary to elaborate an argument as to the invalidity of a seizure and sale by a Sheriff beyond the limits of his county. It is true that by the Act of April 7, 1857, (p. 184,) the time for collecting taxes in the County of San Mateo was extended to June 15th. But the subsequent Act of April 18th, changing the limits of the county, made no provision for the collection beyond the new limits. Of course the change was a restriction of the jurisdiction of all the county officers to the new limits of the county. If the tax was properly assessed before the change of boundaries, the lien would possibly continue after the change. But its enforcement must be made, if at all, by the officers of the county within which the land is included. The absence of any provision for the collection of such a tax is *casus omissus* that would probably practically

prevent the collection of the tax; but all we contend for is that it certainly defeats the action of the Tax Collector in seizing and selling beyond the limits of his jurisdiction.

The next objection to the tax deed is its insufficient recitals. The deed, in order to be *prima facie* evidence of the conveyance intended to be effected by it, must, of course, contain the same recitals as are presented for the certificate. (See pp. 109, 110, of Acts of 1854.) The Act requires (p. 109) that "the amount of the assessment, and their nature," should appear. The amount and nature of the assessment can only mean the amount and nature of the tax levied and assessed upon the property; that is, the character of the sums which make up the amount of tax assessed against the property, the intention being, doubtless, that the validity of the tax and assessment should appear in the instrument. Nothing of this appears in the deed; not the several items of taxation; not the percentage of tax; not even the amount of assessment or the valuation of the property; but only the amount of assessment, with costs. Nothing appears on the face of the deed from which we can by any possible calculation arrive at the amount or nature of the assessment. This provision is dispensed with in the in other respects more elaborate recitals of the Act of 1857. But this Act of 1854 is very explicit in its requirements.

Again: the Act of 1854 provides that the recitals shall contain the date of the notice of seizure. But the deed fails to do so. The date of the seizure is recited, but not of the notice of seizure.

By the Court, SANDERSON, C. J.

This is an action for the possession of land and for the recovery of mesne profits. The complaint is in the usual form, not verified. The answer contains a denial of all the material facts stated in the complaint, and an averment of title in the defendant. The plaintiff recovered judgment for the posses-

sion of the land, and twenty-one hundred dollars rents and profits.

The defendant moved for a new trial, which was denied. The appeal is from the judgment and from the order denying a new trial.

I. In support of his case the plaintiff produced a patent from the Government of the United States, and several mesne conveyances, showing a regular chain of title from the patentees to himself, and proved that the land in controversy was included within the calls of the patent and mesne conveyances, and also proved the value of the use and occupation.

The defendant, by way of set-off to the plaintiff's claim for mesne profits, offered testimony as to the value of his improvements, which, upon the objection of the plaintiff, was excluded by the Court. This ruling of the Court is assigned as error.

No claim for improvements is made in the answer, and for that reason alone the testimony was properly excluded. A defendant in ejectment, who desires to set off the value of his improvements against the mesne profits, must assert his right by proper averments in his answer, or he is precluded from doing so at the trial. In such cases, the value of the improvements constitutes a counter claim, or set-off, and in order to make it available as a defense, it must, like any other new matter, be pleaded.

II. The defendant relied upon a tax title, in support of which he offered a tax deed from the Sheriff and ex officio Tax Collector to W. M. Lent. Then a deed from Lent to John P. Shear, and a lease from John P. Shear to himself. This evidence was objected to by the plaintiff, upon several grounds, and excluded by the Court. Which ruling is next assigned as error.

It appears from the tax deed, which is a part of the record, that the land was listed as the land of persons unknown by the Assessor, and that the same was sold for the taxes for the fiscal year 1856 and 1857. The testimony on the part of the plaintiff proved that the defendant had been in the occupation of the land since 1856. Under these circumstances it is

claimed by the plaintiff that the defendant could not strengthen his title, either by purchasing at the tax sale himself, or by suffering a stranger to buy, and then purchasing from him.

If the defendant was under any legal or moral obligation to pay the taxes, he could not, by neglecting to pay the same and allowing the land to be sold in consequence of such neglect, add to or strengthen his title by purchasing at the sale himself, or by subsequently buying from a stranger who purchased at the sale. Otherwise, he would be allowed to gain an advantage from his own fraud or negligence in failing to pay the taxes. This the law does not permit, either directly or indirectly. On the contrary, if the defendant was under no legal or moral obligation to pay the taxes, there is no principle of law or equity which precludes him from purchasing at the sale, although in possession at the time the assessment was made or when the land was sold. Blackwell, in his work on Tax Titles, at page 470, uses this language: "One in possession of a tract of land at the date of the assessment, may purchase at the sale, unless it appears that he was bound to pay the taxes; in which case he can acquire no title by his purchase." (*Piatt* v. *Sinclair's Heirs*, 6 Ohio, 93; *Chalteau* v. *Jones*, 11 Ill. 322.)

In the present case the taxes were assessed under the Revenue Act of 1854. (Statutes of 1854, p. 88.) The sixty-fourth section of that Act is in the following language: "Lands occupied by any person not the owner thereof shall be listed in the name of the owner, *if known;* otherwise, in the name of the occupant, who shall pay the taxes on the same; and for the taxes paid by such occupant he shall have his action against the owner." The sixty-fifth section of the same Act provides that "unoccupied lands shall be listed in the name of the owner, if known; otherwise, as lands of persons unknown * * *." Thus, the Assessor is required to list the land in the name of the owner, when known, whether the land be vacant or occupied; but when the owner is unknown he must list the land, if occupied, in the name of the occupant; if unoccupied, he must list it as the land of a

person unknown. This rule must be strictly followed by the Assessor, in order to impart any validity to the assessment. If the land is unoccupied and the owner unknown, both these facts must appear in the list made by the Assessor in order to make an assessment to an unknown owner valid. If the land is occupied and the owner unknown, both of these facts must appear in the list in order to make an assessment to the occu-. pant valid; or, in other words, a vacancy as to possession, and an ignorance of the true owner, are conditions precedent to the validity of an assessment against an unknown owner; and, where the land is occupied, ignorance of the true owner is a condition precedent to the validity of an assessment against an occupant. If the land be listed to the owner, nothing more need be stated by the Assessor; but if it be listed in the name of an occupant who is not the owner, it must be stated by the Assessor to have been so listed because the owner was unknown to him; and if it be listed as the land of a person unknown, he must state the land is so listed because the owner is unknown and the land is unoccupied. Unless this care is observed the assessment has not been made according to law, and constitutes no charge upon the land, and no legal obligation is imposed upon any one to pay the taxes. In order to impart any validity to the acts of the Assessor, the provisions of the statute must be strictly followed, and all its conditions fully complied with by that officer. "In powers of this nature *a series of acts*, preliminary in character, are required by law to precede the execution of the power. Each and every step, from the listing of the land for taxation to the consummation of the title by the delivery of a deed to the purchaser, is a separate and independent fact. All of these facts, from the beginning to the end of the proceeding, must exist; and if any material link in the chain of title be wanting, the whole falls to the ground for the want of sufficient authority to support it." (Blackwell on Tax Titles, p. 84.)

From what has been said, it follows that the defendant, notwithstanding he may have been in the occupation of the

Moss *v.* Shear.

land at the time the assessment was made, (the land not hav-
ing been listed in his name,) was under no obligation to pay
the taxes, and therefore was not precluded from purchasing
the tax title.   Independent of this, it does not appear that
the defendant was in possession at the date of the assessment.
The witness who was examined upon this point says "that
the defendant has been in possession *since* 1856."   This lan-
guage embraces no part of the year 1856.   The assessment,
if made at the time required by law, must have been made
between the first Mondays of March and August of the year
1856.   In either aspect, therefore, the defendant was not pre-
cluded from buying at the tax sale.

The land was assessed for the taxes in question in San
Mateo County, and was sold by the Tax Collector of that
county, and the deed in question made by him.   It was
proved by the plaintiff that the land, at the time this action
was brought, was in the County of San Francisco.   The
present boundaries between the two counties were established
by Act of the Legislature on the 18th day of April, 1857,
and the tax sale was made in June thereafter.   These facts
are the foundation of the second objection to the deed, which
is to the effect that the sale was illegal, admitting that all the
previous proceedings were regular.   If the land was in San
Mateo County at the date of the assessment, a subsequent
change in the county boundaries, resulting in a change or
transfer of the land to another county, could not defeat the
lien of the assessment, nor divest the Tax Collector of San
Mateo of the power to enforce the collection of the taxes by
sale of the land.   Upon this point, Mr. Blackwell, in his
work on Tax Titles, at page three hundred and forty-five,
remarks : " When, after an assessment is made, the county in
which the proceeding was had is divided, the Collector of the
old county has power to sell land lying in the territory
embraced in the newly created county," and cites *Devor* v.
*McClintock*, 9 H. and S. 80 ; and adds : " This is in con-
formity with the general principles of law in analagous cases.'

The next and last objection to the deed is that it does not

contain the necessary recitals. This objection, in our judgment, is also untenable. It is not necessary, under the Act of 1854, to recite in the deed the various acts which show a compliance, on the part of the revenue officers, with the several conditions of the statute. These acts are only required to be recited in the certificate of purchase. Their omission from the deed only affects the question of proof. If inserted in the deed, the deed becomes *prima facie* evidence of the truth of the recitals, and the burden of showing that the law has not been complied with in the preliminary steps is cast upon the adversary party. But if omitted, the party offering the deed must prove, *aliunde*, all that is necessary to the validity of the sale. The statute does not prescribe the form of the deed, but simply authorizes the execution of a deed of conveyance in *fee simple* to the purchaser; and its sufficiency must be tested by the principles of the common law. " Any deed which, according to the rules of the common law, would be sufficient to transfer the title of the former owner and vest the estate in the purchaser, is regarded as an operative mode of conveyance, provided it recites the power under which it was made, and is accompanied by proof that the law was strictly complied with." (Blackwell on Tax Titles, page 435; *Chandler* v. *Spear*, 22 Vermont, 388; *Brown* v. *Hutchinson*, 11 Ib. 569; *Spear* v. *Ditty*, 8 Ib. 419; *Bank of Utica* v. *Merseran*, 3 Barb. 528.)

It is not pretended that the deed, tested by the rules of the common law, is insufficient. It is good as an ordinary conveyance, and contains a recital of the power under which it was made. This is all that was necessary to entitle it to be read in evidence. In order to render it of any avail, the defendant would have been compelled to follow it up with other evidence, showing that the law had been strictly complied with. We cannot presume that he was unable to do this, and declare that therefore the deed was properly excluded.

The judgment is reversed and a new trial ordered.

Mr. Justice SHAFTER expressed no opinion.