SCHOOL DISTRICT NUMBER 9 OF HAMILTON COUNTY, PLAINTIFF IN ERROR, V. SCHOOL DISTRICT NUMBER 6 OF HAMILTON COUNTY, DEFENDANT IN ERROR.

1. **School Taxes.** Certain school taxes were voted by school district No. 6 of Hamilton county, while comprising three townships of land. Soon after said taxes were voted, and before the levy of the same, two and one-half townships of land were detached from said district, and formed into school district No. 9. *Held*, That the taxes thus voted should be levied upon district No. 6 as it existed at the time of the levy, and not as it existed at the time they were voted.

2. ———: ACTION. Where the taxes thus voted were collected from all the territory comprising district No. 6 at the time the vote was taken, the money being paid to No. 6, *held,* that district No. 9 could maintain an action for the amount collected in its territory. And for the purpose of doing complete justice and ending the litigation, all the districts since formed ·in the original territory of 9 will be permitted to join as plaintiffs and share in the proceeds.

ERROR to the district court of Hamilton county. Tried below before Post, J. The facts appear in the opinion.

*A. W. Agee* and *M. H. Sessions,* for plaintiff in error.

1. The voting of a tax by school district No. 6, on the first day of April, 1872, created no lien or debt upon the district; that could only be done by virtue of the assessment and levy which were to follow in July, and no levy and assessment·could then be made for district No. 6, except upon the territory of which it was composed at the time the same was made, the debt

NOTE.—*Semble,* that if the records of a school district fail to show that a tax voted is one which they are authorized by law to levy, its collection cannot be enforced. But a failure to specify on the ` tax duplicate all the uses to which the taxes are to be applied will not invalidate the levy. The several items may properly be included under the head of "school district tax." *B. & M. R. R. v. Lancaster County,* 4 Neb., 294. Where, upon a division of a school district, it appeared that there was no finding or determination whatever by the county superintendent as to the property retained by the old district out of which the new one was formed, *held,* that his certificate to the county clerk, stating the amount of tax to be levied on the old district to be paid to the new, when collected, was a nullity. *Ratcliff v. Faris,* 6 Neb., 539. Where bonds had been issued by a school district while comprising twenty-four sections, and afterwards the district was reduced to four sections, *held,* that the district comprising four sections was primarily liable for the payment of the bonds, and that the new districts formed out of the territory of the old were not required to report to the county clerk the amount due on such bonds. *State v. School District,* 8 Neb., 92.—REP.

being fixed by the assessment and not the vote. *Waldron v. Lee*, 5 Pick., 323. *Inglee v. Bosworth*, 5 Pick., 498. *Wells v. Smythe*, 55 Penn. St., 159. *Whittemore v. Smith*, 17 Mass., 347.

2. The voting of a tax is not a grant of money; it is simply a resolve to raise money, and may be rescinded by a vote at any time before the assessment. *Pond v. Negus*, 3 Mass., 230.

3. The result is, that a district voting to raise a tax should be composed of the same limits or territory when the tax is assessed that it was when it was voted —if it is not, it is a new or different district, and the making of it a new or different district, by the changing of its boundaries, annuls the vote to raise the tax. *Richards v. Dagget*, 4 Mass., 534.

4. There were, on and after April 9th, two separate and independent districts, and if the tax payers of either one or both of said districts saw fit to impose upon themselves the burden of paying the taxes upon the same basis that they were voted, to-wit: 15 mills, they have the right to do so, and the money when so paid in would belong to each district respectively. When the money was paid into the county treasury as taxes upon the territory in district No. 9, school district No. 6 had no more right to an interest in that money than district No. 9 had to the money paid in as taxes upon territory in district No. 6.

*E. J. Hainer* and *George B. France*, for defendant in error.

1. Where a corporation is divided and a part thereof is set off and formed into a new corporation, the remaining part of the original corporation, in the absence of statute or agreement to the contrary, retains all the property, powers, rights, and privileges, and remains

334    SUPREME COURT OF NEBRASKA,

School Dist. No. 9 v. School Dist. No. 6.

subject to all its obligations and duties.  We submit that this unquestioned rule of law comprehends in its terms a tax which has been duly apportioned, and the amount of which has become fixed, and this although it remains for certain ministerial officers to perform duties imposed by statute, in relation to properly placing this tax on record.  *Town of Depere v. Town of Bellvue*, 11 American Reports, 602, and cases cited.

2.   Where, by a change of boundary or by a division, made after the assessors of the territory set off have made their returns and the time for making assessment has passed, the county or subdivision from which such territory is detached, and not that to which it is transferred, is entitled to collect and retain the taxes for that year raised from such transferred territory.  *Board of Com'rs Morgan Co. v. Board of Com'rs Hendricks Co.*, 32 Ind., 234.   *Moss v. Shear*, 25 Cal., 38. *Harman v. Inhabitants of New Marlborough*, 9 Cush., 525. If the court should, however, hold that the division of the district annulled the vote, and that the tax was illegally collected, we contend that the plaintiff cannot recover, for it has been decided in analogous cases that a county which has illegally collected taxes in another is liable for the money to the individuals from whom it was collected, and not to the latter county itself. *Grant Co. v. Delaware Co.*, 4 Blackf., 256.   *Gailor v. Herrick*, 42 Barb., 84.   *Town of Gallatin v. Locks*, 21 Barb., 579.

MAXWELL, CH. J.

On the fourteenth day of February, 1872, school district No. 6, of Hamilton county, was organized and included the east half of township ten north, range six west of 6th P.M., and on the twenty-seventh day of March of that year its boundaries were enlarged so

as to include all of townships ten in ranges six, seven, and eight west of the 6th P.M.

On the first Monday of April of that year an election for officers of said district was held, and a tax of ten mills on the dollar of taxable property in the district was voted for the purpose of building a schoolhouse in said district, and also a tax of five mills on the dollar for incidental expenses and the payment of teachers' wages.

On the ninth day of April of that year school district No. 9 was formed, comprising the following territory, viz.: The west half of township ten, range six, and all of townships ten, ranges seven and eight west of 6th P.M. The taxes voted by No. 6 on the first Monday of April, 1872, were levied upon all the territory comprising said district at the time of said election.

In 1875 the Union Pacific Railroad Company, which owned a large quantity of land in district No. 9, paid into the treasury of Hamilton county more than $1,000 of the school tax thus voted by district No. 6 and levied upon its lands in district No. 9. This money was afterwards paid to district No. 6. The plaintiff brings this action to recover the money. On the trial of the cause the court found in favor of the defendant and dismissed the cause. The plaintiff brings the case into this court by petition in error.

Here was a school district, at the time of this election, eighteen miles in length and six miles in width, formed apparently for the purpose of raising a large amount of taxes from the owners of real estate therein, as two and one-half townships of land were added to the district but a few days before the election referred to, and detached therefrom a few days afterwards and formed into district No. 9.

The statute provides that each organized county

shall be divided by the county superintendent into as many school districts as may from time to time be found necessary. Gen. Stat., 961. A school district, being formed for the purpose of affording an education to all the children of school age within its boundaries, is, or should be, limited in extent by the distances that scholars are able to attend school. No satisfactory reason can be given for including lands in a school district so remote from the school that it is impossible for those residing on such lands to attend. It is imposing a burden upon the owners of such property from which they derive no benefit whatever.

The question of the formation of new districts is necessarily left to some extent to the discretion of the county superintendent; yet, if possible, districts should be so formed as not to impose the burden of taxation for school purposes upon lands that in no event can derive a benefit from the erection of a school-house, and maintenance of a school therein.

Section 55 of the school law, provides that, "said school board shall, between the first Monday in June and the third Monday in June in each year, make out and deliver to the county clerk of each county, in which any part of the district is situated, a report in writing under their hands of all taxes voted by the district during the preceding year, and of all taxes which said board is authorized to impose, to be levied on the taxable property of the district, and to be collected by the county treasurer at the same time and in the same manner as state and county taxes are collected, to be paid over to the treasurer of the proper district, on the order of the director, countersigned by the moderator of said district." Gen. Stat., 970.

The report is to be delivered between the first and third Mondays in June in each year, and the taxes voted are to be levied upon the taxable property of

the district.   On the first Monday in July in each year the county commissioners are required to meet at the county seat and levy taxes for the current year, and school taxes are levied at this time.   Gen. Stat., 909. Now upon what property shall these school taxes be levied?   Most certainly upon the property of the district as it exists at the time the levy is made.   The levy has no extra territorial effect.   It is confined to the particular school district voting the taxes.   It is intended that, with the aid derived from the state, each school district shall be self supporting; but if the levy of taxes can be extended over the territory detached after the taxes are voted, the territory thus detached, having been formed into a new district, is compelled not only to support its own school, but to aid in supporting the school of another district.   Each district being thus required to raise its own taxes, school district No. 6 has no interest whatever in the money in question.   This money was raised upon the taxable property of district No. 9, for school purposes, and it should be applied in the district to the purposes for which it was raised. . District No. 9 has therefore an equitable right to the money in question.

Our attention is called to the case of *Morgan Co. v. Hendricks Co.*, 32 Ind., 235.   In that case a portion of Morgan county was attached to Hendricks county after the assessments were made.   The court held in substance that under the statute the lien for taxes had attached at the time of the division, and that Morgan county was entitled to the taxes. The decision appears to rest entirely upon the construction given to the statute.   And the same may be said of the case of *Harmon v. The Inhabitants of New Marlborough*, 9 Cush., 525.

In *Moss v. Shear*, 25 Cal., 38, certain lands were assessed in San Mateo county, and were sold by the tax

24

collector of that county, and a deed made by him. Before the *sale* the boundaries of the county were changed and the lands in question added to the county of San Francisco. It was held that the change in the boundaries did not divest the court of the power to sell the land and make the deed.

Whether the case cited from Indiana is applicable to counties in this state or not, it is unnecessary to determine, but it cannot apply to school districts without palpable injustice. While as between vendor and vendee, and perhaps for some other purposes, taxes attach as a lien upon real estate on the first day of March of each year, and all taxes in this state, when levied, relate back to that period, yet as between school districts, school taxes are to be levied on the territory of each district as it exists at the time the levy is made.

Section 7 of the school law provides that when a new district is formed in whole or in part from one possessed of a school-house or other property, the county superintendent shall ascertain and determine the amount due such new district from the district or districts out of which it may have been in whole or in part formed, etc.

Section 8 provides for imposing a tax for the payment of the amount thus found due. Gen. Stat., 962.

As district No. 6 possessed no property at the time district 9 was formed, there was no finding or determination necessary. But it shows that the statute requires a district retaining the property of another to make compensation therefor. The judgment of the district court is reversed; and for the purpose of doing complete justice between the parties and ending the litigation, it appearing probable that other districts have been formed in the large extent of territory originally comprising district 9, the case is remanded to the district court with instructions to permit all the school

districts now formed in the original territory of district 9 to join as plaintiffs, and to divide the money in question among said districts upon the basis of the assessment of 1872.

JUDGMENT ACCORDINGLY.