SCHOOL DISTRICT NO. 6, HAMILTON COUNTY, PLAINTIFF IN ERROR, v. SCHOOL DISTRICT NO. 9, OF HAMILTON COUNTY, ET AL., DEFENDANTS IN ERROR.

1. **School Districts:** DIVISION: TAXES. In February, 1872, school district No. 6, of Hamilton county, was formed, con-

taining one-half township of land. A few days before the first annual meeting two and a half townships were added to the district, and at the annual meeting taxes to the amount of 15 mills on the dollar valuation were voted. A few days after the annual meeting the portion added was stricken off from 6 and formed into district 9, neither district having any building or property. Notwithstanding the division of the district, the taxes voted by No. 6 were levied upon No. 9, of which, in the year 1875, more than $1000.00 was paid into the county treasury and appropriated by No. 6. *Held*, That an action would lie in favor of No. 9 to recover the same, and that as between No. 9 and districts formed out of it, the money was to be divided in the same proportion as it was raised.

2. Practice: REMANDING CAUSE: FURTHER PROCEEDINGS. Where the issues have been fully presented in a former case and a decision had upon the merits, and the cause remanded with directions in what manner to render judgment, and there has been a substantial compliance therewith, the judgment will be sustained.

ERROR to the district court for Hamilton county. Tried below before POST, J.

*E. J. Hainer* and *George B. France*, for plaintiff in error.

1. Where a corporation is divided and a new corporation is formed out of a part thereof, the remaining part of the original corporation, in the absence of statute or agreement to the contrary, retains the name, property, powers, rights, and privileges, and remains subject to all its obligations and duties. *Town of Depere v. Town of Bellevue,* 31 Wis., 120. *Hampshire v. Franklin,* 16 Mass., 78. *North Yarmouth v. Skillings,* 45 Me., 133. *Morgan v. Beloit City and Town,* 7 Wall., 613. *Richland Co. v. Lawrence,* 12 Ill., 1. *State, ex rel. Mitchell, v. School Dist.,* 8 Neb., 92.

2. The vote of the district is the real levy of school taxes. The duty of commissioners is merely ministerial. The assessment having been completed and the rolls re-

turned when No. 9 was formed, that district could not vote a tax for that year after its formation. The formation of a new district out of a part of the old is simply removing out of the district a part of the taxables, nothing more nor less; and such removal cannot on principle affect any lien of taxes. The tax in question being a subsisting lien upon the lands of the district before the same was divided, No. 6 had a vested interest therein, which, in the absence of agreement to the contrary, remained a credit belonging to No. 6 after the division. *Board of Com'rs Morgan Co. v. Board of Com'rs Hendricks Co.*, 32 Ind., 234. *Moss v. Shear*, 25 Cal., 38. *Harman v. Inhabitants New Marlborough*, 9 Cush., 525.

3. All districts which derived a benefit from the tax should be joined as defendants. This was not done. No. 6 has, subsequent to the payment of this tax, been three times divided and three new districts formed. These districts in the division of property received their proportionate share of this tax, and are therefore necessary parties to this new and equitable (?) method of settling litigations. Bliss on Code Pleading, 97.

*Alfred W. Agee, M. H. Sessions* and *Austin J. Rittenhouse*, for defendants in error, to the point that the voting of tax by No. 6 created no debt or lien in favor of that district, cited *Waldron v. Lee*, 5 Pick., 323–335. *Wells v. Smyth*, 55 Penn. St., 159. *Whittemore v. Smith et al.*, 17 Mass., 347. The voting of a tax is not a grant of money, but simply a resolve to raise money, and may be rescinded by a vote at any time before the levy. *Pond v. Negus et al.*, 3 Mass., 230. Therefore the vote is not "the real levy of a school tax."

MAXWELL, J.

This case was before the court in 1879, and is reported

in the 9th volume of the Reports, page 331.   In that case
the issues were fairly presented as to the matter in dispute,
and it was held (page 337) that " School District No. 6 has
no interest whatever in the money in question."   The judg-
ment of the district court in favor of District No. 6 was
reversed and the cause was remanded.   And the court on
its own motion, directed that the money should be distrib-
uted to the several districts from which it had been raised
on the basis of the assessment of 1872.   The effect of the
decision was a direction to the district court to render judg-
ment in favor of No. 9 and divide the money upon the
basis upon which it was collected.   The cause being re-
manded, No. 9 amended its petition before the judgment
was rendered, when No. 6 again interposed the same de-
fenses previously determined.   The court overruled those
defenses and rendered judgment as directed by this court.
The plaintiff brings the cause into this court by petition in
error.

No motion for a rehearing was filed.   We might there-
fore affirm the judgment without further examination.
But inasmuch as the attorneys for the plaintiff have filed
elaborate briefs, in which they particularly insist that No. 9
being formed from No. 6, the latter district is entitled to
all the corporate property, we will therefore review that
question.

In the case of *North Hempstead v. Hempstead*, 2 Wend.,
109, it was held that on the division of a town, or public
corporation possessing corporate property, into two separate
towns, each, in the absence of legislation regulating the
matter, is entitled to hold in severalty the public property
which fell within its limits.

In the case of *Windham v. Portland*, 4 Mass., 384, it
was held that where a new corporation was created out of
part of the territory of an old corporation, the latter, in
the absence of legislation in respect to the matter, is en-
titled to all the property and is solely answerable for all

the debts of the old corporation. See also *Richards v. Daggett*, 4 Id., 539. *Hampshire v. Franklin*, 16 Id., 76. *Richland Co. v. Lawrence*, 12 Ill., 1. *Blackstone v. Taft*, 4 Gray, 250. *North Yarmouth v. Skillings*, 45 Me., 133. And in the absence of any legislative provision in regard to the matter there is no doubt that the old corporation is entitled to the corporate property and will be answerable for the corporate debts. But this law has no application to the case at bar, for reasons stated hereafter.

Sec. 7 of the act approved Feb. 15, 1869 (G. S., 962), which was in force when this school district was formed, provided that: "When a new district is formed in whole or in part from one or more districts possessed of a school-house or other property, the county superintendent at the time of forming such new district, or as soon thereafter as may be, shall ascertain and determine the amount justly due to such new district from any district or districts out of which it may have been in whole or in part formed, which amount shall be ascertained and determined according to the relative value of the taxable property in the respective parts of such former district or districts at the time of such division."

Sec. 8 provided that: "The amount of such proportion, when so ascertained and determined, shall be certified by the county superintendent to the county clerk, who shall present the said amount to the county commissioners at the July session next succeeding, whose duty it shall be to assess the same upon the taxable property of the district retaining the school-house or other property of the former district in the same manner as if the same had been authorized by a vote of such district, and the money so assessed shall be placed to the credit of the taxable property taken from the former district, and shall be in reduction of any tax imposed in the new district on said taxable property for school district purposes."

Sec. 9 provided that: "When collected, such amount

shall be paid over to the treasurer of the new district to be applied to the use thereof in the same manner, under the direction of its proper officers, as if such sum had been voted and raised by said district for building a school-house, or other district purposes."

It will be seen at once that the special provisions of the statute were designed to require the old district retaining the corporate property to pay to the new district the fair proportion of its value. If a school-house has been built, or other property has been acquired by the old corporation, it is not to be permitted to retain the same without compensation, but must pay to the new district such sum as the county superintendent shall find to be just. The rule of law cited by the plaintiff has been changed by the statute of this state and has no application. Suppose no change had been made in the boundaries of No. 6 until after the tax in question had been collected and the money thus raised had been expended in building a school-house in that district, upon a division of the district could No. 6 have retained the school-house without making any compensation to No. 9, from which the money was collected? Clearly not; because under the statute No. 6 must pay to No. 9 a fair proportion of the value of the corporate property.

But the rule contended for has no application for another reason. In all of the cases cited the corporation which was divided, and a portion set off to form a new corporation, had been an actual corporation, having erected buildings or acquired property, incurred obligations which would remain as a debt against the old corporation.

Take the case of *Morgan Co. v. Hendricks*, 32 Ind., 235, as an illustration. In that case Morgan county had existed for many years. It was exercising corporate powers. A division was made, leaving it responsible for the debts, and the court, treating the assessment and the levy of taxes as property, decided that it was entitled to the same.

And in the case of *Depere v. Bellevue et al.*, 31 Wis., 120, the action was for contribution. It was alleged in the petition that prior to April 2, 1853, and until July 1, 1854, they had but one corporate existence, and were known as the town of Depere, and voted to issue bonds in aid of a plank road, and the same were issued on or about July 1, 1854, payable in twenty years, with interest; and that the present town of Depere had paid the interest on said bonds for seventeen years, and the defendants had paid nothing; and after stating the valuation of each and the proportion each ought to pay, there was a prayer that the defendants be required to contribute according to such proportion. The opinion of the court was delivered by COLE, J., who says (page 125), quoting the language of PARKER, CH. J., in the case of *Hampshire v. Franklin*, 16 Mass., 76–86: "By general principles of law as well as by judicial construction of statutes, if a part of the territory and inhabitants of a town are separated from it by annexation to another or by the creation of a new corporation, the remaining part of the town, or the former corporation, retains all its property, powers, rights, and privileges, and remains subject to all its obligations and duties unless some express provision to the contrary should be made by the act authorizing the separation." It was held that in the absence of a statute providing for contribution, no action of that kind could be maintained.

In the case of *Morgan v. Beloit*, 7 Wall, 613, the action was brought by a creditor in equity against the city and town of Beloit to compel the two corporations to pay certain judgments in the proportion which each ought to pay. The town of Beloit had subscribed for stock in a railroad company and issued bonds to pay therefor. Afterwards the city was created and organized from a portion of the territory which had constituted the town. In the city charter there was a provision that the principal and interest on all bonds which had been issued by the town should

be paid when they became due by the city and town in the same proportions as if the town and city had not been dissolved. Under these provisions of the statute it was held that the action could be maintained.

The plaintiff's case, however, is not within any one of these decisions. Here was a new corporation organized less than two months, without property, and having done no corporate act apparently, except to hold the annual meeting on the first Monday in April. This corporation on paper, covering one-half of a township, had added to its territory a week before the annual meeting two and one-half townships, which were stricken off and formed into No. 9 a week afterwards.

The attorneys for the plaintiff very strenuously insist that the act of voting taxes by a school district is equivalent to a levy of the same, and that therefore the taxes were actually levied at the time of the division of the districts. That this proposition cannot be maintained will readily be seen. The act of voting taxes by a school district is an important prerequisite to the right to levy, as no tax that requires the affirmative vote of the district to give it validity can be imposed without such action. But the act of voting taxes is not a levy. It is merely determining the amount that shall be levied. As the law stood at the time these taxes were voted the vote was taken in April, and the taxes levied by the county commissioners in July, three months afterwards. Now suppose that No. 6 had possessed a school-house and other property, and that the county superintendent, upon dividing the district, had assigned to No. 9 its proportion of the value of the school-house, would this sum have been levied upon the territory of No. 9? The statute says it shall be assessed "upon the taxable property of the district retaining the school-house or other property of the former district." This, then, determines upon what territory such tax is to be levied. The levy is to be limited to the district voting the tax.

Had it been supposed at that time that No. 6 was entitled to all taxes voted by it in the territory set off as No. 9, the county superintendent would have charged to No. 6 the aggregate of the taxes voted by it in that territory, and that amount would have been levied on the taxable property of No. 6 for the use of No. 9. So that in no event was No. 6 entitled to receive property or taxes without paying therefor.

The case of *Morgan Co. v. Hendricks Co.*, 32 Ind., 234, was decided, as we have heretofore said, largely upon the construction given to the statute. The facts were as follows: "A majority of the legal voters residing in territory constituting a part of Morgan county, abutting upon Hendricks, petitioned the boards of commissioners of these counties for such change in the boundaries thereof that said territory should be detached from Morgan and annexed to Hendricks. The order granting the change was made by the commissioners of Morgan county on the eighth, and by the commissioners of Hendricks county on the ninth of June, 1868. The rate of taxation was fixed by the commissioners of Morgan county on the ninth, and by the commissioners of Hendricks on the eleventh of June, 1868. Prior to the making of any of said orders, the assessors of the townships of Morgan county embracing the detached territory had made their enlistments and returned their lists of taxables to the auditor of Morgan county, who placed all the persons and property on the 'tax duplicate' for the year 1868. At the proper time this duplicate was placed in the hands of the treasurer of Morgan county, who proceeded to collect the taxes thus assessed from the persons residing in said detached territory. Upon these facts the parties submitted the legal questions involved to the court below." The court say: "The statute provides, that 'all liens, either by judgment, by mortgage, or otherwise, shall continue in full force in all respects, as if no change had been made in the bound-

aries of said counties; and all taxes that shall be levied and assessed at the time such change shall be made shall be collected in the same manner as if no change had been made in the boundaries of said counties." The act for the valuation and assessment of the real and personal property and the collection of taxes in this state provides that: Every person shall be listed in the township where he resides when the enlistment is made for all personal estate owned by him on the first day of January of the year in which the enlistment is made, including all personal estate in his possession, or under his control as trustee, guardian, executor, or administrator. Every person shall be listed in the township where he resides when the enlistment is made for all lands by him owned within such township, on the first day of January in which the enlistment is made, and occupied by him or wholly unoccupied, including all such real estate owned or held by him as trustee. I. G. & H., 71, secs. 13 and 14. This enlistment is required to be made between the first day of January and the first day of May in each year (I. G. & H., 72, sec. 22), and returned to the county auditor on or before the fourth Monday of May. I. G. & H., 87, sec. 13. The lien for taxes on real estate attaches on the first day of January. I. G. & H., 99, 100, sec. 112. *Harman v. The Inhabitants of New Marlborough,* 9 Cush., 525, is in point. Under the statutes of that state the taxes attached on the first day of January; between that time and the fourth Monday of May the enlistment was required to be made and returned. No change in the county boundary after that time could affect the liability of the taxpayer in the detached territory."

"We must give the words 'levied and assessed' a reasonable construction in view of the entire provisions of the act authorizing the change of county boundaries. Hendricks county could not, under the law, have made the enlistment after the ninth of June. There is an entire absence of any

provision for making a transfer of any portion of the tax duplicate from one county to the other.   A change of residence after the enlistment is made would certainly not discharge the liability for the taxes of the current year."

In the case of *Moss v. Shear*, 25 Cal., 38, it was held that a change of county boundaries, made after land had been assessed for taxes, did not divest the lien of the tax, and the tax collector of the old county might enforce the collection of the tax on land by a sale; and *Harman v. New Marlborough*, 9 Cush., 525, was of similar import. These cases were all examined when this case was formerly before this court, and were then not considered applicable. As great stress was laid upon them by the attorneys for the plaintiff, we have again carefully examined them, and we are fully convinced that our former decision is correct.

The division of school districts in this state is regulated by statute, and this statute contains an express provision that the district retaining the school-house or other property shall pay to the new district such proportion of the value of the same as may be *"justly due."*   This is the statutory mode by which a school district can retain a school-house, or other property erected or purchased at joint expense.   But there is no pretense that any portion of the money in dispute was collected from the territory of No. 6.   The entire sum was raised from the territory set off as No. 9.   It is in no sense a joint property, nor has No. 6 any legal or equitable right to the same.   Whatever may have been the object in attaching two and one-half townships of land to No. 6 immediately preceding the annual meeting, thus forming a district eighteen miles in length by six in width, the practice of forming such large districts, apparently for the sole purpose of taxation, is very objectionable.   It may be said that the object is a meritorious one, and the county being sparsely settled and but little taxable property therein it is necessary to make the districts very large in order to raise a sufficient amount of

money to sustain a school. But this position is untenable. However desirable it may be to raise sufficient funds by taxation or otherwise to properly support schools in sparsely settled neighborhoods, this necessity would not justify a resort to unlawful or unjust modes of raising such funds. The district would not be justified in seizing the property of A or B and selling it for the purpose of raising means to meet its obligations. The object of creating a school district is to have a school taught therein for the education of such persons between the ages of five and twenty-one years residing in the district as desire to attend. A district six miles in length by three in width would seem to be very large, and one eighteen miles in length by six in width would impose the burden of taxation on those remote from the school-house without any equivalent whatever, and is wholly unjustifiable. The state imposes general taxes for the support of schools and permits school districts to raise special taxes, but such taxes should be imposed on those alone who receive the benefits, either personally or to their property.

In 9 Neb., 337, when this case was formerly before the court, it is said: "Each district being thus required to raise its own taxes, school district No. 6 has no interest in the money in question. This money was raised upon the taxable property of district No. 9 for school purposes, and it should be applied in the district to the purposes for which it was raised. District No. 9 has therefore an equitable right to the money in question." This was the finding. The judgment of the court was that the "judgment of the district court is reversed; and for the purpose of doing complete justice between parties and ending the litigation, it appearing probable that other districts have been formed in the large extent of territory originally comprising No. 9, the case is remanded to the district court with instructions to permit all the school districts now formed in the original territory of district No. 9 to join as plain-

tiffs, and to divide the money in question among said districts upon the basis of the assessment of 1872." No objection was made to this judgment nor any attempt made to have it modified. It decided the issues in favor of No. 9 and directed how the money should be divided. It would seem then that all that the district court had to do was to render judgment as directed by this court and divide the money in the mode pointed out. This it has done. The intention was that the district court should render judgment as directed and then permit the districts formed from No. 9 claiming the fund to interplead and apportion it in the way pointed out. This procedure was not strictly followed out. The petition was amended before judgment. But this was an error without prejudice, as this court had directed that judgment be rendered against No. 6. But it is said new issues have been formed, but this is not so, as the questions involved were set up as a defense in the former case. Perhaps the directions of this court as to the procedure were not as definite as they should have been, but there has been a substantial compliance with the judgment of this court, and the judgment is affirmed.

JUDGMENT AFFIRMED.