[No. 3842.]

# THE WATERLOO TURNPIKE ROAD COMPANY
## *v.* J. H. COLE.

ACT CONFERRING SPECIAL FRANCHISE ON CORPORATIONS.—An act of the Legislature which authorizes the board of supervisors of a county to grant to a corporation, organized for building a turnpike road, franchises to be enjoyed and exercised which are not common to all other similar corporations under the general law, or which imposes on a particular corporation obligations not applicable to all other similar corporations, is, in so far as such clauses are concerned, unconstitutional and void.

COLLECTION OF TOLLS BY TURNPIKE COMPANY.—A corporation organized for the purpose of building a turnpike road and collecting tolls thereon,

must have the number and location of its toll-gates fixed by an order of the board of supervisors of the county; and in the absence of such order it has no power to collect tolls, even if the board of supervisors fixes the rates of toll.

Idem.—An order of the board of supervisors authorizing the directors of such corporation to establish toll-gates at such places as the directors may designate, does not confer on the corporation the franchise to collect tolls.

Idem.—In such case, a person traveling on the road may defend successfully in an action brought against him to collect the tolls.

Void Promise.—A promise made by one who has traveled on a turnpike road to pay tolls, is *nudum pactum* if the promissor was under no obligation to pay the tolls.

Appeal from the District Court, Fifth Judicial District, County of San Joaquin.

The plaintiff was incorporated in 1869, for the purpose of constructing a gravel road in the county of San Joaquin, State of California, commencing at the east end or termini of the Stockton and Calaveras Gravel Road, and running thence along and upon the present county road, in a northeasterly direction, to the town of Waterloo, in the said county of San Joaquin, being a distance of about six miles.

On the 8th of September, 1870, the plaintiff petitioned the Board of Supervisors to grant the renewal of its license to collect tolls. The Board fixed the rates of tolls, and made also the following order:

"And it is further ordered that said company be authorized and empowered to establish toll-gates at such places as the directors of the road may designate on the line of said road. The above rates of toll are to be for the round trip, if made within two days."

This was the only order made in relation to toll-gates, but the plaintiff built and used a toll-gate on the west end of its road. The defendant traveled the road with his teams between February 3, 1871, and March 4, 1872, and according to rates of toll as specified in the order of the Board of Supervisors the tolls due amounted to $71.22½. The toll-keeper presented him with the account, and he promised to pay it the next week.

The act of 1867–8, p. 169, provides that the Board of

Supervisors of the county of San Joaquin, on the presentation of a petition of not less than fifty citizens and taxpayers, may grant to any association or corporation the privilege of turnpiking or graveling any portion of a public highway, and that the Board shall require the road to be given back to the county at the end of twenty years, and that the Board shall authorize the corporation or company to collect such tolls as shall produce a net revenue not to exceed twelve per cent. per annum on the amount expended, and that the Board shall have the privilege of purchasing for the county any road so improved, at the cost of the improvements, less the net amount received as tolls at any time during the continuance of the franchise.    The road used by the plaintiff was a public road, and the corporation received a grant of improving it under said act.

The court rendered judgment for the plaintiff, and the defendant appealed.    The other facts are stated in the opinion.

*J. H. Budd,* for the Appellant.

The fixing and prescribing of the toll-gate was to be done by the Board of Supervisors, and could not be delegated by the Board to plaintiff. (*Berger* v. *Duff,* 4 Johns Ch. 397; *Menser* v. *Rider,* 36 Cal. 239.)

Plaintiff could collect tolls only at legally established toll-gates.    (Angell on Highways, Sec. 360; *Griffen* v. *House,* 18 Johns. 397; *H. & D. Turnpike Co.* v. *Baker,* 17 Pick. 432; *Turnpike Co.* v. *Hosmer,* 12 Conn. 361.)

*W. L. Dudley and John B. Hall,* for the Respondent, argued — 1. That as the act of 1853 did not require the plaintiff to erect toll-gates, that it could collect tolls without them; and 2. That as the company had erected a toll-gate under the order made by the Board, the act of 1853 was complied with as against every person using the road; and in their argument proceeded as follows:

"The strong distinction between the cases cited (*Griffin* v. *House,* 18 Johns. 397; *H. & D. Turnpike Company* v. *Baker,* 17 Pick. 432; and *Turnpike Company* v. *Hosmer,* 12

Conn. 361) and'this case, is, that in each of the former the corporation had willfully violated a provision of the charter in having removed its toll-gate from the legally appointed or prescribed place. It was a naked breach of faith on the part of the company with the State, whereby the public were put in jeopardy. In the case at bar the company is not at fault, either by act or· omission, and the gate once located by express direction, thenceforth continued at the same place, with the implied approval of the Supervisors."

By the Court, CROCKETT, J.:

The plaintiff is a turnpike road company, incorporated under the act of May 12, 1853, as amended by the act of April 28, 1857 (Statutes 1853, p. 169; 1857, p. 280), and the action is to enforce the payment of tolls by the defendant. The right of the plaintiff to demand tolls is derived from and wholly regulated by the act under which it was incorporated, and is in no degree affected by the act of March 14, 1868, entitled, "An Act to enlarge the powers of the Board of Supervisors of the county of San Joaquin." (Statutes 1857-8, p. 169.) The last-named act, in so far as it authorizes the Board of Supervisors to grant to a turnpike corporation franchises to be enjoyed and exercised within that county, which are not common to all other similar corporations under the general law, is unconstitutional and void. (*San Francisco* v. *Spring Valley Water Works*, 48 Cal. 493.) The act is obnoxious to several objections, on this ground: It requires the Board of Supervisors to authorize the corporation to collect such tolls as will produce a net revenue not exceeding twelve per cent. per annum on the amount expended; limits the franchise to twenty years, at the end of which term the road is to be surrendered to the county, in good repair, and in the meantime the county may purchase it at cost, less the net amount received for tolls. Under the general law there are no such conditions applicable to turnpike road corporations generally, and none such can be established under our Constitution by special act applicable to only a portion or a particular class of such corporations. The act is therefore void, in so far as it at-

tempts to confer upon *corporations* new or peculiar franchises, or impose upon them additional obligations not applicable to all other similar corporations formed under the general law. Referring to the general law as the source of the plaintiff's right to collect tolls, we find that by section 18, as amended in 1857, it was provided that the corporation "shall only be allowed to put up and keep such toll-gates, demand, collect and receive such tolls as may be fixed and prescribed by the Board of Supervisors," etc., "such gates and tolls to be fixed and prescribed by such Board of Supervisors as aforesaid from year to year." It is there provided that if any corporation shall violate this provision by "putting up any toll-gate or gates, or by collecting any toll or tolls, except as may be fixed and prescribed by such Board, it shall forfeit its corporate rights," etc.

The case was tried by the court without a jury, and findings were expressly waived; but the evidence is brought up in the bill of exceptions, from which it affirmatively appears that the Board of Supervisors, instead of prescribing the number and location of the toll-gates, as it should have done, entered an order by which the corporation was authorized " to establish toll-gates at such places as the directors of the road may designate on the line of said road." It is clear the Board of Supervisors had no power to make the order delegating to the directors the authority to locate the gates at their discretion. It affirmatively appears on the plaintiff's own showing that no toll-gate has been legally established or located on the road; and, until this is done, the plaintiff has no franchise to collect tolls. Under the statute the Board of Supervisors had no authority to authorize tolls to be collected, except at gates which it had itself prescribed. Having prescribed none, the condition has not arisen on which it could authorize the collection of tolls. It is contended, however, that the defendant, in a collateral action, cannot agitate this question; and on this point we are referred to *The Truckee and Tahoe T. R. Company* v. *Campbell* (44 Cal. 89). But the cases are not analogous. In that case, the point relied upon by the defendant was, that before the franchise was granted by the Board of Su-

pervisors the road had been, and continued to be, a public road, on which no tolls were collectible, and that the Board had improperly granted to the corporation a franchise to collect tolls. The point decided was, that under the statute the turnpike company had the right to appropriate a public road, subject to certain restrictions and limitations, to be enforced by the Board of Supervisors, and that "the position taken by the defendant, in his motion for a nonsuit, is virtually an attack upon the validity of the order of the Board of Supervisors in granting the franchise to the plaintiff, on the ground of error in the proceedings of the Board." The court then proceeds to say that the law authorizes a turnpike company to construct its road over a public road, but a resurvey or location of the public road is required to be made, so that it shall be in as good condition as if the turnpike road had not been constructed. "It will not be contended that the Board did not possess competent authority to determine whether all the requisite facts existed, and whether the corporation had performed all the acts necessary on its part to entitle it to a grant of the right to collect tolls. The authority of the Board being conceded, the question whether the Board erred in its exercise cannot be raised by a private person; and clearly the inquiry will not be entertained in a collateral proceeding." But in the one at bar the point raised by the defendant is that it affirmatively appears, from the plaintiff's evidence, that the Board did not acquire jurisdiction to grant the franchise to collect tolls, because of its failure to prescribe the location of the gates, which was a condition precedent to the exercise of the power to grant the franchise. In other words, the proposition is, that the grant is void for want of jurisdiction in the Board to make it, and not merely that the Board erred in the exercise of its admitted jurisdiction. The distinction between the two cases is obvious; and it is too clear to require argument, that when the want of jurisdiction appears on the face of the proceedings, as in this case, any one injuriously affected may avail himself of the defect, even in a collateral action.

We attribute no force to the fact that the defendant prom-

ised to pay the tolls. Being under no obligation to pay them, the promise was *nudum pactum.*

Judgment and order reversed, and cause remanded for a new trial.

Mr. Chief Justice WALLACE did not express an opinion.,