[No. 12257. In Bank. — March 8, 1890.]

# THE PEOPLE, Appellant, v. THE CENTRAL PACIFIC RAILROAD COMPANY, Respondent.

Taxes — Pleading — Construction of Code. — The sufficiency of the complaint in an action to recover delinquent taxes must be tested by the rules regulating pleadings in civil actions, and not by section 3670 of the Political Code.

Id. — Corporation — Averment of Incorporation. — When a corporation is sued, in a complaint for taxes, there must be an averment of the fact of incorporation, and where, and under what law, so that the court may determine where jurisdiction of its person lies.

Id. — Ownership and Location of Property Assessed. — A complaint for taxes must not only aver the fact of assessment of property to the defendant, but must show that the defendant is the owner of the property, and that it was situated within the jurisdiction of the person or board making the assessment, and is within the jurisdiction of the court.

Id. — Assessment and Apportionment of Railroad Property—Authority of State Board of Equalization. — Such complaint must show the authority of the state board of equalization to make and apportion the assessment of railroad property, and show what part of the property assessed is situated in the county to which the apportionment was made.

Id. — Averment of Indebtedness for Taxes — Levy — Non-payment — Percentage. — It is not enough in such complaint to aver indebtedness for taxes; but the complaint must show that the taxes were levied upon the property, and when, where, and by whom the levy was made; that the taxes were based upon the assessment averred, and are delinquent and unpaid; and must show how and when the defendant became indebted for taxes, and how and when the five per cent demanded was added to the amount due.

Id. — Misjoinder of Causes of Action — State and County Taxes — Parties. — A complaint in an action by the state to recover taxes levied upon a railroad cannot properly join causes of action in favor of the several counties through which the road passes. Several causes of action, when properly joined, must be separately stated, and must all belong to one class, and affect all the parties to the action.

Id. — Nature of Tax Proceedings — Cause of Action — Assessment — Levy — Waiver. — Tax proceedings are in invitum, and to be valid must be stricti juris; and a complaint to recover taxes must show upon its face a prima facie case of a valid tax assessed and levied, and that it is delinquent. The statute waiving informality in the assessment does not excuse the total want of assessment, which cannot exist without a description showing the general character and situs of the property. The statute nowhere waives informality in the levy of the tax. There is no tax until one is levied, and a complaint for taxes shows no indebtedness without averring the levy.

CONSTITUTIONAL LAW — SPECIAL LEGISLATION — POLITICAL CODE — TAXA-
TION OF RAILROAD. — The scheme for the assessment, levy, and collec-
tion of taxes on railroads situated in more than one county, prescribed by
sections 3665 to 3679 of the Political Code, is unconstitutional, as being
special legislation not authorized by section 25 of article 4 of the con-
stitution. The legislature cannot assume specially to regulate practice
in the courts of justice as respects pleadings and suits for railroad taxes;
nor pass any special law for the assessment or collection of taxes, except
as empowered by section 13 of article 13, which is limited to legislation
necessary, or at least proper, to carry that article into effect, as respects
the assessment of railroads, and confers no authority for special legis-
lation as to the levy or mode of collection of taxes thereupon.

ID. — TESTS OF SPECIAL LEGISLATION. — A clause or provision special in its
character, applying to particular individuals, particular places, or par-
ticular cases, is none the less special because inserted in the most gen-
eral of public acts. While it is true, with some exceptions, that a law
which applies to all of a class in a state is held to be a general law, it is
equally true that one which applies only to part of a class is special,
and void as being within the constitutional inhibition. Legislation
which relates not to any *genus*, but only to *species*, is special legislation.

ID. — SPECIAL PRIVILEGES OR IMMUNITIES — CORPORATIONS — GENERAL
LAWS — POWER OF LEGISLATURE. — Section 21 of article 1 of the con-
stitution, forbidding special privileges or immunities to be granted, pre-
vents any legislative discrimination in favor of railroads situated within
one county only; and section 1 of article 12, providing that corporations
may be formed under general laws, but shall not be created by special
act, forbids any attempt by the legislature to confer a benefit or impose
a duty upon one or more corporations formed under a general law, not
conferred or imposed upon all corporations formed under the same law.

APPEAL from a judgment of the Superior Court of the
city and county of San Francisco.

The facts are stated in the opinion of the court.

*Attorney-General Johnson,* and *D. M. Delmas,* for Appel-
lant.

*John Garber, Harvey S. Brown,* and *Creed Haymond,* for
Respondent.

Fox, J. — This is an action brought in the name of
the people of the state to recover from the defendant a
certain sum of money alleged to be due the state for
taxes, and also various other sums of money alleged to
be due to divers of the counties of the state, for taxes for

the year 1886. The defendant demurred to the complaint, which demurrer was, upon argument, sustained by the court below, and judgment entered for the defendant, from which the plaintiff appeals.

So far as we are advised, this is the first case in which the precise questions here involved, under the present constitution, has been presented for adjudication. To a complete understanding of it, we give the pleadings at some length. The complaint, after giving the title of the court and cause, is as follows:—

"Plaintiff avers that on the fourteenth day of August, in the year 1886, the state board of equalization assessed the franchise, roadway, road-bed, and rolling stock of the defendant at the sum of twenty million dollars; that the board apportioned the said assessment as follows: To the county of Alameda the sum of $2,607,230 [and here follows similar language as to sixteen other counties, differing only in amount]; that the defendant is indebted to plaintiff for state and county taxes for the year 1886 in the following sums: For state taxes in the sum of $112.000; for county taxes of the county of Alameda in the sum of $16,225.34 [and here follows a statement in similar form as to the other sixteen counties before named, differing only as to amount]; with five per cent added to each of said several sums, for non-payment of taxes.

"Plaintiff demands judgment for said several sums, with five per cent added thereto, together with costs and counsel fees as allowed by law, and prays that an attachment may issue, in form as prescribed by section 540 of the Code of Civil Procedure."

To this complaint the defendant demurred, on the following grounds:—

"1. That the court has no jurisdiction of the subject-matter of the action, nor the person of the defendant herein.

"2. That the plaintiff has not the legal capacity to sue

herein, for the following reasons: That sections 3668, 3669, and 3670 of the Political Code, under the provisions of which said action was instituted, are unconstitutional and void in this: that said sections are in contravention of subdivisions 3 and 10 of section 25 of article 4 of the constitution of the state of California; they also are in contravention of section 21 of article 1 of the constitution of the state of California, and of section 1 of article 12 of the constitution of the state of California; that said sections of the Political Code are in contravention of section 1 of the fourteenth amendment of the constitution of the United States; that so far as the assessment of railroad property is concerned, sections 4 and 10 of article 13 of the state constitution, upon which the said action is founded, are in contravention of section 1 of the fourteenth amendment of the constitution of the United States.

"3. That several causes of action have been improperly united.

"4. That several causes of action have been improperly united, which are not separately stated in the complaint; that is to say. 1. A cause of action for state taxes; 2. A cause of action for county taxes of the county of Alameda [followed by a separate subdivision in similar form for each of the other sixteen counties].

"5. That the complaint does not state facts sufficient to constitute a cause of action.

"6. That the complaint is ambiguous, unintelligible, and uncertain in this: that it does not appear how or when defendant became indebted for taxes; that it does not appear how or when five per cent was added.

" Wherefore, defendant prays judgment against plaintiff, and that it may have its costs in this behalf expended."

I. It will be unnecessary to consider these grounds of demurrer separately at any considerable length. The

questions of jurisdiction, of misjoinder of cause of action, of insufficiency of facts, and of ambiguity, all turn upon the constitutionality of the provisions of the Political Code under which the plaintiff is attempting to proceed, and under which alone, if anywhere, this form of complaint can be justified. But, tested by the provisions of the Code of Civil Procedure, every point made against the complaint is well taken. Outside the Political Code of this state, it is doubtful if either authority or precedent can be found which would have induced any lawyer to file in a court of justice a complaint like this. It does not contain " a statement of the facts constituting a cause of action," as required by section 436 of the Code of Civil Procedure, or as required by any other rule of pleading known to the profession. And yet, by section 421 of the same code—the general statute of this state devoted specially to the subject of pleadings and procedure in civil actions — it is expressly provided that "the forms of pleading in civil actions, and the rules by which the sufficiency of the pleadings is to be determined, are those prescribed in this code." And by the provisions of the Political Code, from which code it is conceded that this form of complaint is taken, it is expressly declared that " the provisions of the four codes shall be treated as if passed at the same moment of time, and were parts of the same act," and that "if the provisions of any title conflict with or contravene the provisions of another title, the provisions of each title must prevail as to all matters and questions arising out of the subject-matter of such title." (Pol. Code, secs. 4480, 4481.) The sections of the Code of Civil Procedure referred to are part of title 6, part 2. The subject-matter of that title is pleadings in civil actions, and it is the only title in the four codes devoted specially to that subject. It is, therefore, the title which section 4481 of the Political Code declares "*must* prevail as to all matters and questions arising out of that sub-

ject-matter." How, then, can we test the sufficiency of pleadings by the provisions of section 3670 of the Political Code? That section is the only warrant for this complaint, and is found in title 9, part 3,— a title devoted entirely to the subject of revenue.

Responsive to this, the appellant says that the same legislature passed both codes; that its power to legislate is supreme, except when and where limited by the constitution; and that its power is ample to prescribe one form of complaint for one class of cases, and another form for another class. That is true; but the same legislature had the power to say, and did say, that " the forms of pleading in civil actions, and the rules by which the sufficiency of the pleadings is to be determined, are those prescribed by *this* act," to wit, the Code of Civil Procedure, which is a separate act from other codes, though deemed to have been passed at the same moment of time; and in the exercise of the same power, at the same moment of time, in another act which defines the rights and duties of all persons subject to the jurisdiction of the state, and a part thereof devoted to a " definition of the sources of the law," and a title of such part defining " the effect of the codes," it expressly tells the courts by what rule they shall be governed in case the provisions of the four codes, or of either code, are found to be conflicting.

Guided by that rule, when we examine this complaint we find it defective in all these particulars: —

1. The defendant is sued by a name indicating that it is not a natural person, but a company of some kind; but there is no averment of the fact of incorporation, or of any fact to show that it is an artificial being capable of being sued; nor if incorporated, is there any averment to show where, or under what law, so that the court may determine where jurisdiction of its person lies. An averment of defendant's corporate existence is neces-

sary in every count of a complaint against a corporation.   (*Loup* v. *C. S. R. R. Co.*, 63 Cal. 99.)

2. There is an averment of the fact of assessment of "the franchise, roadway, road-bed, rails, and rolling stock of the defendant," but there is no averment that the defendant is the owner of such or any property, situate in this state or elsewhere; nothing to show that the property so assessed was or is within the jurisdiction of the board making the assessment, or of this court, nor, indeed, that there was any such property *in esse*.

3. There is an averment that the board apportioned the said assessment to seventeen different counties in the state, but there is nothing to show its authority to make any such apportionment; that any portion of the property, or of any property of defendant, was situate in any one of said counties.   The apportionment is of the total sum at which the assessment is made, without a word of description of the property so assessed, or of the part thereof so apportioned to any one of said counties.

4. There is an averment of indebtedness for state taxes, but no averment that any taxes were ever levied or imposed upon the defendant or its property; or if a levy was made, when, where, or by whom it was made, or whether the taxes were based or levied upon the assessment so made, or the property so assessed as aforesaid, or that there are any state taxes against the defendant delinquent or unpaid.

5. There is an averment of indebtedness for county taxes in each of the seventeen counties named, but as to each the same defect exists as above noted in reference to state taxes.

6. If there is any cause of action stated in this complaint at all, there are eighteen separate and distinct causes of action, all in one count, and not separately stated.   They affect, and if the money is collected it will belong to, eighteen different persons, to wit, the state, and seventeen separate counties.   The only provision in

the title of the code on the subject of pleadings which authorizes the uniting of several causes of action in the same complaint requires that they shall all belong to one class,—affect all the parties to the action, and must be separately stated. (Code Civ. Proc., sec. 427.)

7. The complaint is also ambiguous, for the reason stated in the sixth ground of demurrer.

Tax proceedings are *in invitum*, and to be valid must be *stricti juris*. (Cooley on Taxation, 259, 260; *Moss* v. *Shear*, 25 Cal. 46; 85 Am. Dec. 94; *People* v. *Mahoney*, 55 Cal. 288; *Lake County* v. *S. B. Q. M. Co.*, 66 Cal. 20.) If not valid, they constiute no cause of action. It therefore becomes necessary that a complaint in an action for the collection of a tax should show upon its face facts sufficient to make out a *prima facie* case of valid tax, and that it is delinquent. It is true that the title on revenue provides that " no assessment, or act relating to assessment or collection of taxes, is illegal on account of informality, nor because the same was not completed within the time required by law." (Pol. Code, sec. 3885.) But the waiving of informality does not waive the necessity for action. That an assessment shall not be invalid because of some informality does not excuse the total want of assessment. There can be no assessment unless there is some property assessed, and to be assessed there must be some attempt at description of the property. At least, its general character must be shown, and its *situs* must be shown to be within the state or the county where assessed. It will be observed, also, that the section quoted refers to informality in the matters of *assessment* and *collection* only. The statute nowhere waives informality in the matter of *levy* of the tax. There is no tax until one is levied, and a complaint shows no indebtedness for taxes unless it shows the levy of a tax. In this complaint there is no intimation that a tax, either state or county, was ever levied.

Counsel for appellant has cited several decisions of

this court in support of the power of the legislature to prescribe by special act a special form of complaint in actions for the collection of taxes. Unfortunately for his argument, those decisions were all based upon special acts passed at a time when the legislature had power to pass special laws upon almost any subject, and even before the adoption of the codes; forgetting that here he is attempting to proceed under the codes themselves, and that in them the legislature has itself provided for just such a contingency as arises here, and directed us as to which shall prevail in case of conflict between the different parts of the same general law.

II. But the respondent, by its demurrer, attacks this complaint, and all the proceedings upon which it is based, upon other and higher ground than that which we have thus far considered. The law upon which these proceedings are based is attacked as being in conflict with the constitution of the state.

The provisions of the constitution on the subject of revenue are all found in article 13, and comprise the whole law of the constitution on the subject of the assessment of property for purposes of taxation, and of the levy and collection of taxes. Those provisions which bear most directly upon the questions here involved are found in sections 10 and 13, which read as follows: —

"Sec. 10. All property, except as hereinafter in this section provided, shall be assessed in the county, city, city and county, town, township, or district in which it is situated, in the manner prescribed by law. The franchise, roadway, road-bed, rails, and rolling stock of all railroads operated in more than one county in this state shall be assessed by the state board of equalization at their actual value, and the same shall be apportioned to the counties, cities and counties, cities, towns, townships, and districts in which such railroads are located, in proportion to the number of miles of railway laid in such

counties, cities and counties, cities, towns, townships, and districts."

"Sec. 13. The legislature shall pass all laws necessary to carry out the provisions of this article."

The last section quoted is the one to which we have to look for authority to levy the tax. The first section of the article commences by providing that "all property in the state . . . . shall be taxed in proportion to its value, to be ascertained as provided by law"; and several subsequent sections speak of the "levy" and the "taxes so levied," and one says that "income taxes may be assessed to and collected from," etc.; but nowhere in the article is there any provision made as to when, or by whom, or in what manner any property tax shall be levied. Provision for that must be made by the legislature under section 13, the last section of the article. The same is true with reference to the provision for the collection of property taxes. Both these subjects are relegated entirely to the legislature.

We are therefore compelled to turn to the article of the constitution on the subject of the legislative department, to ascertain whether or not there are any limitations upon the mode and manner in which the legislature may exercise the powers and perform the duties imposed upon it by this section 13, or as to the extent which it may go in the exercise of those powers. These provisions are found in article 4 of the constitution.

Turning to section 25 of that article we find this provision: "The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . . 3. Regulating the practice of courts of justice; . . . . 10. For the assessment or collection of taxes; . . . . 13. Extending the time for the collection of taxes; . . . . 20. Exempting property from taxation; . . . . 24. Authorizing the creation, extension, or impairing of liens." An examination of the whole section shows conclusively that the intention of the framers of

the constitution, and of the people in adopting it, was to prohibit the legislature from passing local or special laws which should in any wise affect questions of taxation, or the liens of taxes, or the practice in courts of justice. All these must be provided for by general and uniform law.

The legislature has provided a general and uniform law "regulating the practice of courts of justice." That law requires that the complaint in a civil action shall be such as we have already indicated, and that its sufficiency shall be determined as therein prescribed. Yet in the teeth of this constitutional inhibition, and in spite of the fact that the provisions of the constitution are "mandatory and prohibitory, unless by express words they are declared to be otherwise" (art. 1, sec. 22), the legislature has provided,—1. A general scheme for the assessment, levy, and collection of taxes; and 2. A special scheme for the assessment, levy, and collection of taxes on railroads situate in more than one county, and in that special scheme has provided for the form of complaint adopted in this action.

The special scheme referred to is found in sections 3665 to 3670 of the Political Code, the form of complaint being authorized by the latter section. The whole scheme, so far as it relates to the collection of taxes, is claimed to be in conflict with the constitution, and in due course will be considered, but for the moment we are dealing only with that part of it which provides for this complaint.

It is claimed by appellant that this is not in conflict with the third subdivision of said section 25 of article 4, for that it relates to pleading, and not to practice. But this is taking too narrow a view of the language of the constitution. It is evident that the words of this inhibitory clause of the constitution are used in their general sense, and in that sense the words "practice of courts of justice" include all "pleadings," although the word

"pleadings" never includes all "practice." It is impossible to contemplate the subject of "practice of the courts of justice," and eliminate from the mind all thought of "pleading." Burrill defines "practice," first, as "the course of procedure in courts," and says that "in a general sense practice includes pleading." Rapalje and Lawrence's Law Dictionary gives the following definition of the word "practice": "The law of practice or procedure is that which regulates the formal steps in an action or other judicial proceeding. It therefore deals with writs, summonses, *pleadings*, affidavits, notices, motions, petitions, orders, trials, judgments, appeals, costs, and executions."

But it is further claimed by appellant that even if "practice" includes "pleadings," the provision is not in conflict with this inhibition of the constitution, for the reason that it is found in the Political Code, which is a general law. It does not follow that because an isolated provision is found in a general statute the provision is itself a general law. Such a provision may be purely "special," and come within the inhibition of the constitution, even when found in the code itself. It was so held, with reference to a section in the Political Code, in *Earle* v. *Board of Education*, 55 Cal. 489. In *Miller* v. *Kister*, 68 Cal. 142, it was held that a provision found in the general law entitled "An act to establish a uniform system of county and township governments," temporarily suspending the operation of some of the provisions of the act as to four of the counties of the state, was "special" legislation, and void, under the clause of the constitution here under consideration. So it appears that a clause or provision special in its character — applying to particular individuals, particular places, or particular cases — is none the less "special" because inserted in the most general of public acts. A special act cannot be converted into a general act by a declaration of the legislature that it shall be so considered. (*San*

*Francisco* v. *S. V. W. W.*, 48 Cal. 493.)   Nor can it be so converted by being embodied or entombed in an act which in its general scope and purpose is a general law. If it can be so converted into a general law, then, as was said by the court in *Dundee M. T. I. Co.* v. *School District No. 1*, 10 Saw. 52, "every prohibition contained in the constitution may be violated with impunity. . . . . An act cannot be both public and private, but it can be either and be 'special.'"   In *Manning* v. *Klippel*, 9 Or. 367, it was held that an act providing for the compensation of the sheriffs and clerks of fourteen out of twenty counties of the state was a "local law" for the assessment and collection of taxes for county purposes, and therefore within this constitutional prohibition, and void.

III.   But the objection goes not alone to the form of complaint, but to the entire legislative scheme for the collection of taxes upon railroads operated in more than one county.   It is to the effect that the entire scheme is "special," and in conflict with the different subdivisions of section 25, article 4, of the constitution, which we have quoted; and that being so in conflict, no action can be maintained thereunder for the collection of taxes, whatever may be the form of the complaint.

If this scheme is " special," then the cases which we have already cited will apply to it in all its parts, and to them many others might be added from the courts of last resort in very many of the different states in the Union; but this court has already expressed itself so plainly upon the subject in the cases cited, that it is unnecessary to go elsewhere for authority.

Practically admitting that the scheme is "special," the appellant justifies it under section 13 of article 13 of the constitution, above quoted, claiming that the legislature is not only authorized but required to pass all laws *necessary* to carry that article into effect.   That is true; but it is not authorized, required, or empowered

to pass laws that are not necessary to carry it into effect, nor to destroy the uniform operation of laws which are required by the constitution itself to have a uniform operation.

It will be borne in mind that the constitution provides for a difference in the mode of assessment only, not in the mode of levy, or of collection of the tax on the property when assessed. Under the constitution, it became necessary, or if not necessary at least proper, for the legislature to pass laws providing the details for the assessment, and apportionment of the assessment, of this class of property by the state board of equalization. It is the only property in the state of which that board is authorized by the constitution to make assessment, and as the board is only authorized to make such assessment when the property is situate in two or more counties, apportionment thereof to the several counties became necessary. To provide for the details of that apportionment, and of notice to the several counties interested, it became necessary and proper that the legislature should act, and in so far as its action relates to the assessment, and the apportionment thereof, it is not attacked as being in conflict with the constitution.

But this legislation also provides a mode of collection differing from that found in the general law on the subject; not necessary for the purpose of carrying into effect any of the provisions of article 13 of the constitution, and "special" because not applicable to all property, or even to railroad property generally, but only to such railroad property as is situate or operated in two or more counties. For this reason it is in direct conflict with, and is specially forbidden by, subdivision 10 of section 25 of article 4 of the constitution. It is therefore void, and furnishes no cause of action upon which suit can be maintained under it.

The provisions of the code for the collection of taxes generally, and those for the collection of taxes upon the

portion of this class of property especially, which lies in two or more counties, are too long to justify quotation in full in this opinion, but a reference to a few of the points of difference between them will serve to illustrate the "special" character of the legislation against which this objection is pointed.

Before calling attention to those differences, however, it is proper to note a few general provisions of the revenue law which are alike applicable to all persons and all property, and which serve to show a total absence of necessity for any difference in the mode of collection.

"Every tax has the effect of a judgment against the person, and every lien created by this title has the force and effect of an execution duly levied against all the property of the delinquent; the judgment is not satisfied, nor the lien removed, until the taxes are paid or the property sold for the payment thereof." (Pol. Code, sec. 3716.) "Every tax due upon personal property is a lien upon the real property of the owner thereof from and after 12 o'clock M. of the first Monday in March in each year." (Pol. Code, sec. 3717.) "Every tax due upon real property is a lien against the property assessed, and every tax upon improvements upon real estate assessed to others than the owner of the real estate is a lien upon the land and improvements, which several liens attach as of the first Monday of March in each year." (Pol. Code, sec. 3718.) These provisions apply to and these liens attach to the property of railroad companies owning and operating roads situate in two or more counties, the same as to all other property in the state. It will thus be seen that, for the taxes upon this class of property, the state and every county in it has the same security that is provided for taxes upon all other property in the state,—a lien upon all the property of the owner,—not even excepting that which is by law exempt from execution; and by other provisions of the statute it is made a first lien; so that, in no

event, can the state be defeated in the collection of its taxes, if its own proceedings in the assessment, levy, and collection have been lawful.

Under the general law, the taxes upon all property, except that here under consideration, are collected by the tax collector of the county in which the property is situated; the state assumes the burden, the expense, and the risk of transporting its portion of the taxes so collected from the respective county seats to the state treasury. Under this special law all the taxes upon this class of property must be paid at the office of the state treasurer, after first getting a certificate of the controller as to the amount thereof. This includes not only the state but the county taxes for the several counties, thus imposing upon the tax-payer the burden, the expense, and the risk of transporting to the capital of the state moneys which, in the aggregate, may be estimated by tons, as all taxes in this state must be paid in coin.

Under both laws, if the tax becomes delinquent five per cent is added. Under the general law, on or before the first Monday in February, the tax collector publishes in his county a delinquent list, which notifies the tax-payer of the amount of his delinquency, and of the time when the lien will be enforced by the sale of his property. Until that time he has the right to pay the tax, with the five per cent for delinquency, and fifty cents for the cost of publication of each separate description of real property assessed to him, and upon each assessment of personal property. If he does not pay it, the least amount of his property which any bidder will take and pay the tax and percentage and costs will be sold, and he will thereafter have at least one year in which to redeem the same. Under this special law, no notice of delinquency is ever published, but if the taxes remain unpaid until after the first Monday in February, the controller must then commence an action for the recovery of the taxes due the state, and the various counties

and cities and counties of the state, together with the said five per cent penalty for delinquency, and the costs of suit; and it is specially provided that, whether the tax be then paid before or after judgment, the defendant shall also pay such counsel fees as the court may allow. It is further provided that, in such action, the unverified complaint, in the form used in this case, shall be sufficient, and that, upon the filing of such complaint, the clerk *must* issue the writ of attachment prayed for. It will thus be seen that, under this law, the tax-payer is not only burdened with heavy costs and expenses not provided for by the general law, but in addition to that, and notwithstanding the fact that the state has, as in all other cases, a first lien upon everything which he owns, any particular portion of this property which the representatives of the state may see fit to direct is liable to be summarily seized upon attachment, and if it be personal property, taken out of his possession, held pending the suit, and finally sold under judgment for what it will bring. If there then be a deficiency, the original first lien still remains upon all the balance of his property. The inequalities, and the possibilities of injustice, under such a provision, are certainly very great. Take the case at bar: the total amount sued for in this case, exclusive of costs and counsel fees, is $330,800.44. For this the state has a first lien upon the property, and most of it fixed property, assessed by itself at twenty million dollars. Notwithstanding that vast security, she asks for (and having asked, must have it) an attachment, under which her officers may direct the sheriff to seize and take possession of all the rolling stock of the company, stopping its entire traffic, and holding it for months, possibly years, until the litigation is concluded. Such a provision is not only in conflict with subdivision 10, *supra,* but also with subdivision 3, *supra;* for the general law regulating the practice of courts of justice authorizes the writ of attachment only

when the plaintiff, by affidavit, shows that the debt for the recovery of which the action is brought is not secured by any mortgage, lien, or pledge of real or personal property. (We make no point of the want of undertaking for the writ, for the reason that the state is not, under the general law on that subject, required to give an undertaking in any action brought by it.)

Under the general law, the sale for taxes upon realty is of the realty, or some part thereof. Such a sale will also be for the taxes upon personal property, if assessed to the same person. Under such a sale there is a year at least in which to redeem. Under this special law, if the proceeding goes to judgment and sale, the sale may be entirely of personal property, from which there is no redemption; if of realty, there is but six months in which to redeem.

These are but a few of the points of difference between the general and special provisions of this law, but they are sufficient to show a marked and broad discrimination against the owners of railroad property situate or operated in two or more counties of the state. It is a discrimination which is not made against and does not apply to railroad property and the owners of railroad property generally, but only when the property is situate in two or more counties. It is a matter of common knowledge that there are numerous railroads in this state each situate wholly within one county. To such this special mode of collection of taxes has no application. While it is true that a law which applies to all of a class in a state is held to be a general law (to which rule, however, this court has held that there are some exceptions, as in *Ex parte Westerfield,* 55 Cal. 550), it is equally true that one which applies to only a part of a class is "special," and under a constitutional inhibition like ours, is void. The case of *Dundee Mortgage Trust Co.* v. *School District No. 1,* 10 Saw. 52, is directly in point. The state of Oregon had a constitutional provision provid-

ing that the legislature should not pass "special or local" laws for the assessment and collection of taxes for state, county, township, or road purposes. An act was passed providing for the taxation of mortgages upon real property situate in no more than one county, in which it was provided that mortgages upon land situate in more than one county should be void. An attempt was made to enforce the collection of taxes upon mortgages upon land situate in no more than one county by sale of the notes and mortgages, as provided might be done under the act. The sale was enjoined, and the act declared void, because it provided for the taxation of mortgages upon lands situate in not more than one county, and not upon all mortgages. Judge Deady, in discussing the question, said: "An act providing for the assessment of mortgages generally is, so far, a general act. It comprehends the *genus*. But an act providing for the assessment of all mortgages for sums exceeding five hundred dollars, or not payable within one year from the date of their execution, is special. It comprehends only a *species* of mortgages. So an act providing for the assessment of mortgages on wood-lands, plow-lands, or river-lands is special; and in my judgment, an act that taxes mortgages on land in no more than one county, to the exclusion of those on land in more than one, is in the same category. It does not comprehend the *genus* mortgages, but only the *species*,—one-county mortgages." So here, these provisions of law now under consideration do not comprehend the *genus* railroads, but only the *species*,—two-county railroads.

The general law for the collection of taxes in this state provides for the bringing of suit in certain cases, but this is not one of them, and is not brought in accordance with that general law. This is a fact which still further serves to mark the provisions under which this proceeding is had as special, and in violation of the prohibitions of the constitution.

Section 3899 of the Political Code, a part of that general law, reads as follows:—

"The controller may, at any time after a delinquent list has been delivered to a collector, direct such collector not to proceed in the collection of any tax on said list amounting to three hundred dollars, further than to offer for sale but once any property upon which such tax is a lien. Upon such direction, the collector, after offering the property for sale once, and there being no purchaser in good faith, must make out and deliver to the controller a certified copy of the entries upon the delinquent list relative to such tax; and the tax collector, or the controller in case the tax collector refuses or neglects for fifteen days after being directed to bring suit for collection by the controller, may proceed by civil action in the proper court, and in the name of the people of the state of California, to collect such tax and costs."

This is the provision under which tax-payers other than those owning railroads situate or operated in two or more counties may be sued for the collection of taxes. The proceedings and form of complaint are then similar to those in this case, and are open to the same objection, when tested by the codes, or by subdivision 3, section 25, of article 4, of the constitution, as already noted; but the action cannot be brought or maintained until the property has been offered for sale by the tax collector, once at least, and even then it must be commenced in the county where the property is situate, and the money, when paid, whether before or after judgment, must be paid to the county treasurer, and not to the state treasurer. (Pol. Code, sec. 3900.)

The appellant argues that all these special provisions now under consideration operate as and constitute an immunity in favor of the respondent, and that it cannot, therefore, complain of them. If appellant is correct in this, then these provisions are in direct conflict with section 21, article 1, of the constitution, and void. That

section reads: "No special privileges or immunities shall
ever be granted which may not be altered, revoked, or
repealed by the legislature; nor shall any citizen, or class
of citizens, be granted privileges or immunities which
upon the same terms shall not be granted to all citizens."
But appellant is mistaken as to the party to whom these
special privileges and immunities are granted. It is not
to the few whose railroads are situate in two or more
counties, but to those whose railroads are situate each
entirely in one county, and to all other tax-payers except
those of the class to which this defendant belongs.

As to this defendant and the few others situate like
it, these provisions impose burdens not imposed upon
other railroad corporations. All railroad corporations
in this state are organized under one general law, and
the constitutional provision with reference to that law
is: "Corporations may be formed under general laws,
but shall not be created by special act." (Art. 12, sec.
1.) This court has held, in the most emphatic terms,
that any attempt to confer a benefit or impose a duty
upon one or more corporations formed under a general
law, not conferred or imposed upon all corporations
formed under the same law, is in conflict with this pro-
vision of the constitution, and void. "Private corpora-
tions, formed for similar purposes, will stand upon the
same footing, enjoy the same rights, and be subject to
the same burdens, which cannot be increased or dimin-
ished, except by general laws applicable to all. . . . .
The rights and duties of all corporations formed under
the general law . . . . are fixed and determined by its
terms, and can only be changed or modified by amend-
ment of the general law. And every such amendment
must be made applicable to all corporations created
under the general law." (*San Francisco* v. *S. V. W. W.*,
48 Cal. 493.) The same doctrine has since been laid
down and adhered to in *Waterloo Turnpike Road Co.* v.
*Cole,* 51 Cal. 381; *Spring V. W. W.* v. *Bryant,* 52 Cal.

132; and *Omnibus Railroad Co.* v. *Baldwin,* 57 Cal. 160.

That these provisions for the collection of taxes upon the property of railroad companies operating in two or more counties do impose burdens not imposed upon other railroad companies organized under the same general law, seems to us too plain for argument.

From what we have already said, it follows that the judgment appealed from in this case must be affirmed. It therefore becomes unnecessary to consider the only other point made upon the demurrer. Our decision of that point either way would not change the result.

Judgment affirmed.

McFARLAND, J., SHARPSTEIN, J., PATERSON, J., and WORKS, J., concurred.

THORNTON, J., dissented.

BEATTY, C. J., dissenting.—I dissent. The prevailing opinion goes entirely upon the ground that the provisions of the Political Code relating to the assessment and collection of taxes levied upon railroads operated in two or more counties are in conflict with section 25 of article 4 of the state constitution,—a section which prohibits local and special legislation on certain enumerated subjects. In my opinion, the legislation referred to is neither local or special: it is not local, because it operates throughout the state; and it is not special, because it applies to all railroads of a class created and defined by the constitution itself. I content myself with this brief indication of the grounds of my dissent, because want of time precludes a more elaborate statement.

The question as to the alleged conflict of our revenue law with the fourteenth amendment to the constitution of the United States not having been considered in the opinion of the court, the occasion does not call for any expression of my individual views.