MERCANTILE TRUST CO. v. ATLANTIC & P. R. CO. et al.

(Circuit Court, S. D. California. April 7, 1897.)

1. RAILROAD RECEIVERS—AFFIRMANCE OF SALE—RIGHTS OF BONDHOLDERS.

The S. R. Co. entered into an agreement with the A. R. Co. and two other railroad corporations by which the S. Co. agreed to sell a certain described line of railroad, without equipment, to the A. Co., for a stipulated sum, of which a large amount was to be paid in cash, and the rest either in cash or in bonds of the A. Co., the payment of the purchase price being guarantied by the other two companies in consideration of their interest in securing a connection over the line sold. It was also agreed that, as the S. Co. could not then give a clear title, it should lease the line in question to the A. Co., until it could give clear title, for a stipulated rental, including all taxes on the property, such rental being also guarantied by the other two companies. The A. Co. took possession of the line, and afterwards executed a mortgage covering it, with other property. In a suit for the foreclosure of this mortgage, subsequently brought, receivers of the road were appointed, who paid the rental and taxes under the agreement with the S. Co. from time to time, in part with the proceeds of receivers' certificates issued upon their representations of the necessity to the mortgaged road of the line sold by the S. Co. *Held*, that the agreement between the several companies was not a mere lease, but was a contract for a sale, the conditions of which the mortgagees who derived their rights under it could not, while asserting such rights, be permitted to disaffirm; but, if ever open to disaffirmance, the acts of the receivers had affirmed it.

2. SAME—RESISTING TAX ASSESSMENT—COSTS OF LITIGATION.

Prior to the appointment of the receiver of the A. Co., the S. Co., to which the taxes on the line in question were assessed, objected to an increase, by the California state board of equalization, of the assessment of its property, including said line, and sought, by litigation extending over several years, to reduce such assessment, and, having failed to do so, presented a claim to the receiver of the A. Co. for a proportional part of the amount paid by it, including interest, penalties, and costs. *Held*, that as the contract under which the A. Co. held the line in question provided for the payment of taxes, and as the receivers had been directed in the order appointing them to pay the taxes due and to become due, the receiver should now be directed to pay the tax, and, as the A. Co. had assented to the contest instituted by the S. Co., they should also be required to pay a proportionate share of the interest, penalties, and costs.

Alexander & Green and White & Monroe, for complainant.

C. N. Sterry, for receiver.

Henry S. Brown, J. E. Foulds, and J. H. Chapman, for Southern Pac. R. Co.

Neill B. Field and A. W. Hutton, for United States Trust Co.

ROSS, Circuit Judge. On the 20th day of August, 1884, a contract was made and entered into in writing by and between the

Southern Pacific Railroad Company, a corporation organized under and in pursuance of the laws of the state of California, as party of the first part; the Atlantic & Pacific Railroad Company, a corporation created and organized under the acts of the congress of the United States, as party of the second part; the St. Louis & San Francisco Railway Company, a corporation organized under the laws of the state of Missouri, as party of the third part; and the Atchison, Topeka & Santa Fé Railroad Company, a corporation organized pursuant to the laws of the territory and state of Kansas, as party of the fourth part,—which recited that whereas, the party of the first part to the contract was then the owner of a certain line of railway in the state of California, particularly described therein; and whereas, it had then been agreed by and between the parties to the contract that such line of railway should be sold by the party of the first part thereto, and purchased by the party of the second part, upon the terms and conditions therein stated; and whereas, in consequence of the lien then existing upon such line of railway under the mortgage made and executed by the party of the first part, bearing date April 1, 1875, the party of the first part could not then make clear title to such line of railway, it had then been agreed that, until clear title thereto could be made, such line of railway should be leased by the party of the first part to the party of the second part, upon certain terms and conditions therein stated; and whereas, the parties of the third and fourth parts were then largely interested pecuniarily in the acquisition of such line of railway by the party of the second part "by lease and purchase as aforesaid,"—the respective parties did thereupon, in consideration of the premises and the mutual undertakings and agreements in the contract stated, and for other good and valuable considerations therein acknowledged, covenant and agree to and with each other as follows:

First. The party of the first part agreed to sell to the party of the second part, and the party of the second part agreed to purchase from the party of the first part, the said line of railway, described as extending from the west end of the bridge over the Colorado river at or near The Needles, in the state of California, 242.37 miles, or thereabouts, to the easterly margin of the grounds or yards of the party of the first part used in connection with the Mojave Junction station, or with the main line of railroad of the party of the first part between Goshen and Yuma, together with the right of way therefor 200 feet in width, and the switches, sidings, turnouts, station buildings, section houses, turntables, and other appurtenances, together with the right to connect at Mojave Junction with the tracks of the party of the first part, but excluding the equipment of the road, and any interference with the right of way and depot grounds of the party of the first part at the junction mentioned, at and for the price of $30,-000 a mile, that is to say, $7,271,100, of which purchase price one-sixth part, that is to say, $1,211,850, to be paid in cash, and the remaining $6,059,250 to be paid by the party of the second part to the party of the first part either in cash or in first mortgage 6 per cent. bonds of the party of the second part, issued under and

secured, by its first mortgage bearing date July 1, 1880, the prompt payment of the principal and interest of which to be legally guarantied by the parties of the third and fourth parts to the contract, respectively; it being expressly agreed that the sale should be consummated and the purchase price of the line of railway paid whenever the party of the first part should be able to make clear title thereto, discharged from the lien of its first mortgage, bearing date April 1, 1875, and from all other liens existing thereon at the time of the contract, or which may be imposed thereon by the party of the first part at any time thereafter.

Second. The contract declared that in the meantime, and until the consummation of such sale and payment of the purchase price of the property, the party of the first part agreed to and did lease and demise to the party of the second part, and the party of the second part agreed to and did hire from the party of the first part, from the 1st day of October, 1884, the said line of railway, together with the appurtenances, in the contract agreed to be sold, at and for the annual rental of $1,800 per mile, that is to say, $436,266, payable semiannually during the continuance of such lease; and the party of the second part covenanted and agreed to and with the party of the first part, for itself and its successors and assigns, to pay to the party of the first part, its successors and assigns, as rental for the line of railway and appurtenances mentioned, until the consummation of the sale and the payment of the purchase price, as provided for, the sum of $218,133 on the 1st days of April and October in each and every year; and, further, for itself and on behalf of its successors and assigns, to further promptly pay and discharge all taxes and assessments which should thereafter become due upon said property, or any part of it, or which might become in any wise due or owing in respect to the same, and would maintain, repair, and replace such property so that the same should at all times be and remain in substantially as good plight and condition as it then was, the nature and character of the property being considered.

Third. The contract further provided that, in case default should be made in the payment of any installment of such rental at the time stipulated for its payment, and such default should continue for 30 days, the party of the first part, its successors and assigns, might thereupon, and without demand or other formality, enter upon and take possession of the said line of railway, with its said appurtenances, and should be thereafter entitled to hold, retain, and enjoy the same as of its original estate therein; but, notwithstanding such entry, the party of the second part, its successors and assigns, should be liable to the party of the first part, its successors and assigns, for any and all damage in any wise resulting from the nonfulfillment of the contract, or any wrongful acts or omissions of the party of the second part, its successors or assigns, in respect to the said property, or any part thereof. The contract contained the further provision that, in case of the happening of any such default in respect to the payment of the rental provided for, and the continuance of such

default for 30 days, then, and in that event, at the election of the party of the first part, its successors or assigns, the right of the party of the second part to purchase the premises under the provisions of the contract should cease and determine.

Fourth. The party of the third part and the party of the fourth part to the contract, for themselves and their respective successors and assigns, in consideration of their pecuniary interest in the stock and securities of the party of the second part and their interest in the opening and maintenance of a through line of freight and passenger traffic over their respective lines of railway and over the line of railway then belonging to the party of the first part (the subject of the contract), and for other good and valuable considerations in the contract acknowledged, guarantied to the party of the first part, its successors and assigns, the prompt payment to the party of the first part, its successors and assigns, of the several installments of rental and of the purchase price therein agreed to be paid by the party of the second part to the party of the first part, and that, in case default should be made by the party of the second part in the payment of such installments of rent, or of any part thereof, or in the payment of such purchase price at the time or times stipulated for the payment thereof, the parties of the third and fourth parts, for themselves and their respective successors and assigns, would promptly pay to the party of the first part, upon demand, any and all amounts in respect of which the party of the second part should make such default, which amounts so paid by the party of the third or fourth part should be justly chargeable by the party paying the same against all amounts then due, or which might become due, from it to the party of the second part for traffic over such leased lines, or any line of the party of the second part, and should be otherwise enforceable as a debt of the party of the second part to the party of the third or fourth part who should have paid the same; it being understood and agreed, however, that the parties of the third and fourth parts should not be liable in solido for such amounts, but that each of such parties should be liable only for the one-half part of the several installments of rent and the purchase price thus guarantied by it.

The contract in question contained other provisions not important to be specially mentioned. Under and by virtue of this contract, the Atlantic & Pacific Railroad Company, on the 1st day of October, 1884, took actual possession of the line of railroad therein described, and its appurtenances, excepting only the equipment thereof, and continued in the actual and exclusive possession, use, and control thereof until the appointment by this court of receivers of the property, since which time the receivers have, respectively, been in such actual and exclusive possession, use, and control. While the Atlantic & Pacific Railroad Company was in possession, use, and control of the line of railroad and its appurtenances extending from The Needles to Mojave, under and by virtue of the aforesaid contract of August 20, 1884, to wit, on the 1st day of September, 1887, it executed a mortgage, covering, among other property, its right, title, and

interest thereto and therein, to the Mercantile Trust Company of New York to secure the payment of certain bonds. The Atlantic & Pacific Railroad Company had previously, to wit, on the 1st day of July, 1880, executed to the Union Trust Company of New York a mortgage to secure the payment of certain other bonds, which mortgage was broad enough to cover, and whose terms did cover, the after-acquired interest of the mortgagor in the line of railroad and its appurtenances, constituting the subject-matter of the contract here in question. By virtue of its mortgage, and because the Atlantic & Pacific Railroad Company had made such default in its terms and conditions as entitled it to do so, the Mercantile Trust Company, on the 8th day of January, 1894, commenced suit in this court for the foreclosure of its mortgage, and to obtain the appointment of a receiver or receivers of all of the property covered thereby during its pendency. That mortgage covering the entire line of road of the Atlantic & Pacific Company, the principal portion of which is situated in the territories of New Mexico and Arizona, the mortgagee had previously commenced similar suits in the United States courts for those territories, in each of which suits three receivers of the property of the mortgagor there situated were appointed. Of the portion of the mortgaged property situated within this judicial district this court, in the suit here brought by the Mercantile Trust Company, appointed the same receivers who had been appointed by the court of primary jurisdiction. Those receivers at once qualified, and took possession of such of the line of road as extended from The Needles to Mojave, with its appurtenances. Subsequently, to wit, on June 14, 1895, the Mercantile Trust Company filed an amended and supplemental bill in its suit in this court, in which the United States Trust Company of New York was made a party defendant as the holder of a first mortgage on the said line of road extending from The Needles to Mojave, with its appurtenances. To that amended and supplemental bill the United States Trust Company appeared by counsel. Later in the proceedings in the suit, one of the original receivers having deceased, and the remaining two having tendered their resignations, this court, following the similar action of the court of primary jurisdiction, accepted their resignations, to take effect upon the appointment and qualification of a successor or successors. Thereupon this court, still following the similar action of the court of primary jurisdiction, appointed C. W. Smith receiver of the property situated within this judicial district, who qualified as such, and received from the former receivers herein the possession of the said property, since which time he has been, and now is, in its actual and exclusive possession, use, and control. On the 25th day of August, 1896, the receiver, Mr. Smith, filed in and presented to this court his petition, setting forth the contract of August 20, 1884, made and entered into between the Southern Pacific Railroad Company, the Atlantic & Pacific Railroad Company, the St. Louis & San Francisco Railway Company, and the Atchison, Topeka & Santa Fé Railroad Company, and the continuous and exclusive possession, under that contract, of the line of road extending from The Needles to Mojave, with its appurtenances, by the Atlantic

& Pacific Railroad Company, and the receivers of its property ever since, and further alleging that the receivers so appointed have not disavowed that contract, but, on the contrary, during the receivership, have expressly acknowledged and admitted its terms and conditions, so far as the receivership is concerned. The petition of the receiver further states that the receivers have at all times promptly paid to the Southern Pacific Railroad Company all taxes paid by it, or claimed to have been paid by it, upon the line of railroad described in the contract of August 20, 1884, including not only taxes assessed and levied for the years in which the receivers have been in possession of that line of road, but also for taxes which were levied and reassessed against the Southern Pacific Railroad Company for the years 1885, 1886, and 1887; that the state board of equalization of the state of California, in August, 1887, for the purposes of state and county taxation for the fiscal year ending June 30, 1888, assessed the Southern Pacific Railroad Company, as the owner and operator of a line of railroad running in more than one county in said state, consisting of 1,022.33 miles in the state of California, together with the franchises, roadway, roadbed, rails, and rolling stock, at the sum of $16,500 per mile, and that included in that assessment and valuation was the line of railroad described in said contract of August 20, 1884; that thereafter and in due time the state board of equalization of California apportioned of said total assessment of the franchises, roadway, roadbed, rails, and rolling stock of the defendant to the county of Kern the amount of $2,476,945 of said total assessment of the railroad therein of 153.47 miles, and to the county of San Bernardino the sum of $4,220,022 for the railroad therein of 261.47 miles; that at that time, of the line of road described in said contract of August 20, 1884, there was situated 35.64 miles in Kern county, Cal., and 206.87 miles in the county of San Bernardino, which constituted a part of the said 1,022.33 miles; that from the time of the execution of the said contract of August 20, 1884, to the present time, the line of road described in that contract, because of the revenue laws of the state of California, has been assessed by the state board of equalization of the state of California to the Southern Pacific Railroad Company, which has, whenever it saw fit to do so, paid the taxes due upon the line of road described in said contract of August 20, 1884, and made bills therefor against the Atlantic & Pacific Railroad Company and the receivers thereof; that neither the receivers nor the Atlantic & Pacific Railroad Company have ever attempted to pay the taxes thereon, but have always waited until the Southern Pacific Railroad Company should pay the same, for the reason that in each county there were additional taxes against the balance of the lines of railroad belonging to the Southern Pacific Railroad Company, and therefore there was no way of paying the amount due upon the portion of road extending from Mojave to The Needles without paying the entire amount due from the Southern Pacific Railroad Company in each county; that when the taxes became due which were levied and assessed upon said lines of railroad of the Southern Pacific

Railroad Company for the year 1888 [1887], the Southern Pacific Railroad Company failed to pay the same, and that the said taxes became delinquent on the last Monday of December, 1887, at 6 o'clock p. m.; that the total amount of taxes levied for the fiscal year ending June 30, 1888, against the Southern Pacific Railroad Company for its railroad in the county of Kern was $34,479.07, and that upon the failure to pay the same there was added to it by the comptroller of the state the sum of $1,723.95 as penalty; that there was levied for the same year in the county of San Bernardino upon said assessment upon the total lines of railroad belonging to the Southern Pacific Railroad Company the sum of $30,468.56, and that there was added to said amount as a penalty, upon its becoming delinquent, the sum of $1,523.42; that on the 2d day of January, 1891, the state of California caused an action to be brought in the superior court of the state of California in and for the city and county of San Francisco against the Southern Pacific Railroad Company to recover the entire amount of taxes which had been levied in the various counties upon the lines of railway owned and operated by it, including the line of railroad mentioned and described in the written contract of August 20, 1884, and seeking to recover the total sum of $251,134.26, with 5 per cent. penalty thereon, which included the sums so levied in Kern and San Bernardino counties, as aforesaid, and that afterwards, to wit, February 3, 1893, a judgment was duly rendered in the action for the total sum of $251,134.26, together with interest thereon from the 27th day of December, 1887, at the rate of 7 per cent. per annum, amounting to $89,654.91, together with 5 per cent. penalty upon said principal sum, amounting to $12,556.66, and the further sum of $18,835.06 for attorney's fees, and $42.16 costs against the Southern Pacific Railroad Company; that thereafter an appeal was duly taken from that judgment to the supreme court of California, which court affirmed the judgment (38 Pac. 912) except as to the amount allowed for interest, namely, the sum of $89,654.91, and as to the sum of $6,278.31 allowed as attorney's fees to one A. R. Cotton; that afterwards the Southern Pacific Railroad Company appealed from that judgment to the supreme court of the United States, pending which appeal the operation of the judgment was stayed; that pending the appeal to the supreme court of the United States, and in 1894, the state board of equalization, under an act of the legislature of the state of California approved March 23, 1893, made a reassessment of the taxes due from the Southern Pacific Railroad Company on its system of railroads for the year ending June 30, 1888, and, taxes having been duly levied thereon upon that reassessment, the Southern Pacific Railroad Company, in the fall of 1894, paid the first half of the taxes upon such reassessment, and made a bill to the receivers of the Atlantic & Pacific Railroad Company for their proportion, amounting to the sum of $14,902.86, which bill the receivers paid in due time; that thereafter, and in the spring of 1896, the supreme court of the United States affirmed the judgment so appealed from (16 Sup. Ct. 794), after which the Southern Pacific Railroad Company paid the

amount thereof, and on the 8th day of June, 1896, made and presented to the present petitioner, as receiver, a bill for the proportion of the taxes which it claimed to be due from the receiver under the contract entered into between the Southern Pacific Railroad Company, the Atlantic & Pacific Railroad Company, the St. Louis & San Francisco Railway Company, and the Atchison, Topeka & Santa Fé Railroad Company; that included in the bill so made is the sum of $5,981.87, as the portion of attorney's fees collected by the state of California which the Southern Pacific Railroad Company claims that the receiver should pay; and that there is also added to said bill the sum of $12,580.36 as and for interest on the judgment from the date of its rendition to the date of its payment, at 7 per cent. per annum, and being the proportion which the Southern Pacific Railroad Company claims that the receiver should pay.

The petition of the receiver further alleges that the action of the Southern Pacific Railroad Company in permitting a penalty to be added to the said tax and in permitting attorney's fees, costs, and interest to accrue thereon, was without the knowledge or consent of the Atlantic & Pacific Railroad Company or its receivers, in that neither the Atlantic & Pacific Railroad Company nor its receivers had any voice in the matter, nor was that company or its receivers ever consulted about the same. The petition of the receiver further states that the United States Trust Company objects to the payment by the receiver of any part of the bill so presented by the Southern Pacific Railroad Company, and he therefore asks the advice and order of this court as to what he shall do in the premises. The bill presented by the Southern Pacific Railroad Company, concerning which the controversy arises, is as follows:

San Francisco, Cal., June 8, 1896.

Atlantic and Pacific R. R. Co. to Southern Pacific Company, Pacific System.

Amended Bill.

Charged in
Month of
1896.

June 8. For state and county taxes as paid by Southern Pacific Company under judgment of U. S. supreme court, March, 1896, for the year ending June 30, 1888, on the franchise, roadbed, rails, rolling stock, etc., of the line from Mojave to The Needles.

Valuation returned by the So. Pac. R. R. Co. in 1887.............. $9,570,200
Roadbed, etc .................................... $ 8,182,900
Rolling stock .................................. 1,387,300, or 14.50%

Original assessment of So. Pac. R. R. Co. in 1887:
Amount of tax, $251,134.26......................... $16,139 60 per mile
Less 14.50% .................................... 2,340 24

$13,799 36

Kern Co., 35.64 miles R. R. at $13,799.36 per mile, $491,809.19, at
$2.00 per $100.................................................. $ 9,836 18
San Bernardino Co., 206.87 miles R. R., at $13,799.36 per mile, $2,-
854,673.60, at $1.33 per $100................................... 37,967 15

$47,803 33

```
Amount  brought  forward...............................  $47,803 33
  Proportion of $47,803.33 to total tax ($251,134.26), 19.03%.
Add penalty ...........................  $12,556 66
Add attorney fees.......................   18,877 22
                                         ———————  $31,433 88
19% of $31,433.88 .............................................  5,981 87
                                                                 ————————
                                                                 $53,785 20
Interest from date of judgment, Feb. 5/93, to June 8/96, 3 years
  4 mos. 3 days, at 7% per annum.......,....................  12,580 36
                                                                 ————————
                                                                 $66,365 56
Less payments by company:
  Bill rendered and paid, 1st Inst. of reassessment
    Nov. 22/94 .....................................$14,902 86
  Interest, Nov. 22/94, to June 8/96, 1 year 6 mos. 16
    days, at 7%....................................  1,611 16
  Interest on tender of 2d Inst. of reassessment, Apr.
    25/95, to June 8/96, 1 year 1 mo. 13 days, at 7%..  1,167 80
                                                         ————————  17,681 82
                                                                   ————————
                                                                   $48,683 74
```

I certify the above to be correct.  E. B. Ryan.
Examined.  George T. Klink.
Approved.  E. C. W.

Payment should be made to the treasurer S. P. Co., San Francisco, Cal. If any item is questioned, or explanation is required, address General Auditor, San Francisco, Cal.

The Mercantile Trust Company and the United States Trust Company each filed an answer to the petition of the receiver. By its answer, the former objected to the payment of any portion of the penalty or attorney's fees included in the bill in question, and the latter protested against the payment of any portion of the bill, on the ground that the tax in question became delinquent, and the penalty accrued, prior to the appointment of either of the receivers, and that, while the claim may be valid against the Atlantic & Pacific Railroad Company, it is invalid as against its mortgagees, and consequently not a proper charge against the receiver. Thereafter the Southern Pacific Railroad Company filed an intervening petition, asking the court to direct the payment of the bill rendered by it, to which the receiver and the United States Trust Company filed answers. The matters at issue were thereupon referred to a special master to take the proofs of the respective parties, and report the same, together with his findings of fact and conclusions of law, to the court. The report of the master was filed December 11, 1896, and to the report the Southern Pacific Railroad Company filed exceptions January 4, 1897. Thereafter the report and the exceptions thereto came on regularly for hearing, at which time the receiver, by leave of the court, amended his petition by so changing the clause therein in relation to the acknowledgment and ratification by the receivers of the contract of August 20, 1884, as to make it read as follows:

And that the receivers have not disavowed said contract, neither have said receivers affirmed said contract in any manner whatever, unless their acts with reference thereto shall in law be deemed to amount to an affirmance thereof.

The first and third findings of the special master are to the effect that the Southern Pacific Railroad 'Company leased the line of railroad extending from The Needles to Mojave, with its appurtenances, to the Atlantic & Pacific Railroad Company, which company entered into possession thereof under such lease, and continued in such possession until the appointment of the receivers. To these findings the Southern Pacific Railroad Company excepted, on the ground that they are contrary to the terms and legal effect of the written contract of August 20, 1884.

The sixteenth finding is as follows:

The value of the leased property, for the purposes of taxation for the year 1887, considered separately from any franchises or rolling stock (and taking into consideration the fact, which I find to be true, that the cost of operating the leased property has for many years prior and subsequent to the appointment of the receivers herein exceeded its earnings), was $4,000 per mile, or a total of $969,480, which is 5.39% of the entire valuation of the franchises, roadway, roadbed, rails, and rolling stock of the Southern Pacific Railroad Company in California, as fixed by the state board of equalization for that year.

To this finding, the Southern Pacific Railroad Company excepted, on the ground that all of the testimony upon which it is based was erroneously admitted, and was objected and excepted to by the intervener at the time, and upon the ground that the finding is unsupported by the evidence as given, and is not a finding of the value of the property for the purpose of taxation for the year 1887, considered separately from any franchises or rolling stock, and, further, is in entire disregard of the contract of August 20, 1884.

The nineteenth finding is as follows:

I find that 5.39% of $251,154.26, the amount of the original tax for 1887, without interest or penalties, amounts to the sum of $13,536.13.

To this finding the intervener excepted, upon the ground that it is not within the issues presented by the pleadings.

The twenty-second finding is as follows:

I find that the action of the intervener, the Southern Pacific Railroad Company, in refusing to pay the said taxes levied and assessed for the fiscal year of 1887, ending June 30, 1888, and in defending the said suit of the state of California therefor, was wholly voluntary upon its part, and was in no manner induced or caused by any request, consent, or advice upon the part of the defendant the Atlantic and Pacific Railroad Company, represented by W. C. Hazeldine, its general attorney, or other attorney, officer, or agent having authority in the premises, or upon the part of the present or former receivers herein, or of any attorney or representative of such receivers.

To this finding the intervener excepted, upon the ground that it is not only unsupported by, but is directly contrary to, the evidence in the case.

The twenty-third finding is as follows:

I find that, while the original receivers and the present receiver have continued to operate and use the leased line of road since their respective appoint-

ments, the contract of lease dated August 20th, 1884, has not been expressly or impliedly affirmed or adopted by them in such manner as to require the present receiver to pay the account of the intervener in question.

To this finding the intervener excepted, on the ground that it is in conflict with the petition of the receiver, and with the answer filed thereto by the United States Trust Company of New York, and with the orders theretofore made by the court in the cause, and with the evidence in the case.

Exceptions were also taken by the Southern Pacific Railroad Company to all of the conclusions of law reported by the special master, the first of which is to the effect that the evidence offered and introduced before him, showing the respective amounts of taxes levied and assessed for the years 1883, 1884, 1885, and 1886, and subsequently reassessed and paid by the intervener, was irrelevant and immaterial, and should, together with the findings of fact based thereon, be disregarded. The second is to the effect that, although the amounts shown by the bill rendered by the intervening petitioner to the receiver were not paid until June 6, 1896, yet inasmuch as such payments were made exclusively on account of taxes due for the fiscal year 1887, ending June 30, 1888, upon the assessment made by the state board of equalization for that year on all of the property of the Southern Pacific Railroad Company, including the Mojave Division, such payments do not, under the orders appointing the receivers, and under the facts shown by the evidence, and found, constitute such an equitable claim, charge, or lien, as against the United States Trust Company, upon the property, or the earnings thereof in the hands of the receiver, as to require or justify the payment of the account, or any part thereof, by the receiver. The third conclusion of law is to the effect that the evidence introduced by the respective parties before the master in reference to the justice and fairness of the total taxes levied for the year 1887 and other years, upon the property of the intervener, which was charged by that company against the Atlantic & Pacific Railroad Company under the contract of August 20, 1884, was irrelevant and immaterial, and should, together with the findings of fact thereon, be disregarded. The fourth and last conclusion of law is to the effect that an order should be made and entered directing the receiver not to pay any part of the bill rendered by the intervening petitioner, the Southern Pacific Railroad Company, and that its petition in that behalf be dismissed.

The findings of the special master, to which no exceptions were taken show, among other things:

That the receivers originally appointed in this suit took possession of the property described in the contract of August 20, 1884, and continued to operate it as a part of the Atlantic & Pacific Railroad until the appointment and qualification of the present receiver, who thereupon took possession of the property, and has ever since continued to operate it as a part of the Atlantic & Pacific Railroad. That the

Southern Pacific Railroad Company returned its franchises, roadway, roadbed, rails, and rolling stock, situated in the state of California, and subject to taxation by the state board of equalization, at the following valuation, for the following years:

(A) For the franchise, roadway, roadbed, and rails, for the year
  1885 .................................................. $ 8,991,350 00
  For the rolling stock.................................... 1,383,050 00
  
  Total ............................................... $10,374,400 00
(B) For the year 1886, for the franchises, roadway, roadbed,
  and rails ............................................. $ 9,991,300 00
  For the rolling stock.................................... 1,387,300 00
  
  Total ............................................... $11,378,600 00
(C) For the year 1887, for the franchises, roadway, roadbed, and
  rails ................................................. $ 8,992,592 00
  For the rolling stock.................................... 1,427,350 00
  
  Total ............................................... $10,419,942 00

That the state board of equalization of the state of California increased the valuation as returned by the Southern Pacific Railroad Company for the years 1885, 1886, and 1887, as follows:

For the year 1885 the value of the franchises, roadway, roadbed, rails, and rolling stock was fixed by the state board of equalization at $17,000,000. For the year 1886 the value of the same property was fixed by the same board at $17,000,000. For the year 1887 the value of the same property was fixed by the same board at $16,500,000.

That the valuations so fixed by the state board of equalization of the state of California were so fixed for each year, respectively, as an entirety; and that the state board of equalization did not attempt to assess separately the value of either the franchises, the roadbed, roadway, or rails, or of the rolling stock; and that the evidence fails to show upon what, if any, particular class of property returned by the Southern Pacific Railroad Company for taxation for these years the increase in valuation was made. That the Southern Pacific Railroad Company successfully resisted in the courts the collection of the taxes assessed against it for the years 1885 and 1886 by the state board of equalization of the state of California. That, in pursuance of legislation authorizing such action, the state board of equalization of the state of California reassessed the property of the Southern Pacific Railroad Company in California for the years 1885 and 1886, and attempted to reassess the same property for the year 1887. That, as a result of such reassessment, the valuation of the said property as fixed by the state board of equalization for the years 1885 and 1886 was reduced as follows: "For the year 1885, to $9,570,200; for the year 1886 to $9,-570,200." That the Southern Pacific Railroad Company paid the taxes so reassessed for the years 1885 and 1886, and the former receivers of the Atlantic & Pacific Railroad Company, appointed

by this court January 8, 1894, paid to the Southern Pacific Railroad
Company such proportion of said taxes as was demanded by the
Southern Pacific Railroad Company, and at the time here stated,
that is to say:

| | |
|---|---:|
| March 21, 1894 | $15,074 10 |
| June 4, 1894 | 15,074 10 |
| January 11, 1895 | 14,870 60 |
| May 13, 1895 | 14,870 60 |
| Total | $59,889 40 |

That, of the taxes of the Southern Pacific Railroad Company for
the year 1885, the amount apportioned to the Atlantic & Pacific
Railroad Company as the taxes of the Mojave Division, by the rep-
resentatives of the Southern Pacific Railroad Company, on the
basis of the original assessment, would have been $52,517; and
that interest on that sum at 7 per cent. per annum to the date
of actual payment would amount to $29,409, making a total amount
of $81,296. That the apportionment for the year 1886 on the same
basis would have been, for taxes $52,517, and for interest $29,409,
making a total of $81,296, or a total for the two years of $162,592;
while under the reassessment the total amount paid by the Atlan-
tic & Pacific Railroad Company for the years 1885 and 1886 was
$59,889.40. That at the time the taxes for the years 1885 and 1886
were originally assessed, and for many years thereafter the Atlan-
tic & Pacific Railroad Company was a solvent and going concern,
while at the time of the reassessment in the years 1893 and 1894
it was insolvent, and in the hands of the receivers.

The findings also show that, of the amount of taxes, attorney's
fees, interest, and penalties originally adjudged to be paid by the
superior court of the city and county of San Francisco, there was
a deduction of interest amounting to $89,654.91, and of counsel fees
amounting to $6,278.31, upon a review of that judgment by the su-
preme court of California, which was affirmed by the supreme court
of the United States; that the total value of the franchises, road-
way, roadbed, rails, and rolling stock of the Southern Pacific Rail-
road Company in California for the year 1887, as fixed by the state
board of equalization, was $16,500,000; that, of the taxes assessed
against the Southern Pacific Railroad Company in California for
the year 1887, the former receivers paid to the Southern Pacific
Railroad Company, on the 11th day of January, 1895, the sum of
$14,902.86, which sum was paid within a reasonable time after de-
mand made therefor; and that no subsequent demand for payment
of any portion of the remainder of the taxes of 1887, as claimed by
the Southern Pacific Railroad Company, was ever made until the
presentation of the bill here in question.

The special master further found that on the 23d day of May,
1892, the Southern Pacific Railroad Company refunded to the At-
lantic & Pacific Railroad Company the sum of $25,924.39, upon a
demand by the Atlantic & Pacific Railroad Company, and upon a

voucher made by the representatives of the latter company, for excessive taxes theretofore paid by the Atlantic & Pacific Company to the Southern Pacific Railroad Company, as follows:

| | |
|---|---:|
| For the year ending June 30, 1885 | $ 1,926 66 |
| For the year ending June 30, 1889 | 6,871 29 |
| For the year ending June 30, 1890 | 9,181 17 |
| For the year ending June 30, 1891 | 7,945 27 |
| Making a total of | $25,924 39 |

Upon the hearing of the exceptions, it was stipulated and agreed by and between counsel for the respective parties that all papers referred to or mentioned in the exceptions should be considered to the same extent and with the same force and effect as if offered upon the hearing before the master; and that, in addition to the papers mentioned in those exceptions, the petition of the United States Trust Company of New York, filed in this court, praying leave of the court to institute suit against the receivers appointed in this cause, with the bill of complaint attached to that petition, and the order of the court made thereon, should be considered with the same effect as if offered in evidence before the master; and that the petition of the receivers of the Atchison, Topeka & Santa Fé Railroad Company to the court originally appointing them, and the order of that court based thereon, asking leave to disaffirm the contract of lease attached to the petition of the receiver herein, and also the petition of the receivers of the St. Louis & San Francisco Railway Company to the court originally appointing them, and the order of that court based thereon, for like leave to disaffirm the said contract, and also the answer and objections of the United States Trust Company of New York to the application of the receivers for leave to borrow money, which answer and objections were filed in this court on the 14th day of May, 1895, should be considered with the same effect as if offered in evidence before the master. It was further stipulated that none of the parties to the present record were parties to the proceedings in which the attempted disaffirmance took place, nor had any notice thereof; the stipulation, however, reserving any and all objections to the materiality, relevancy, and admissibility of any of such papers and evidence.

It is perfectly evident, I think, not only from the language of the contract which forms the basis of the present controversy, but also from the actions of the parties thereto with respect to its subject-matter, that the contract was not a mere lease of the road. The right of immediate possession and use conferred under the term "lease" was but an incident of the principal contract, which embraced the sale of the line of road described, with its appurtenances, excepting only its equipment, to the Atlantic & Pacific Railroad Company, for the sum of $7,271,100, the payment of which was not only promised on the part of the Atlantic & Pacific Railroad Company, but guarantied by the Atchison, Topeka & Santa Fé Railroad Company and the St. Louis & San Francisco Railway Company. A part, at least, of the consideration moving the guarantors (for it is so declared, in effect, in the contract itself), was the securing by them of an entrance into California for the freight and passenger traffic of

their own roads. The Southern Pacific Railroad Company, by reason of an existing mortgage, not being then able to give a clear title to the line of road, and the vendee and guarantors being desirous of securing the evident anticipated advantages offered by the line extending from The Needles to Mojave, the respective parties stipulated for its immediate possession, use, and control by the vendee, for which possession, use, and control the vendee promised to pay the vendor, and the Atchison, Topeka & Santa Fé and St. Louis & San Francisco Companies guarantied, an annual rental, the sum of which amounted to 6 per cent. on the deferred purchase money.

If anything more be needed to show that the contract of August 20, 1884, was not a mere lease of the line of road in question, with its appurtenances, it is found in the fact that the contract required a cash payment by the vendee to the vendor of $1,211,850, and in the further fact that the vendee, shortly after the contract, proceeded to mortgage that line of road, with its appurtenances, along with other property, to the complainant in this suit, the Mercantile Trust Company of New York. It was by virtue of that mortgage that the Mercantile Trust Company brought the present suit, and invoked the authority and powers of this court over this particular property; and it is by virtue of the prior mortgage executed by the Atlantic & Pacific Railroad Company to the United States Trust Company of New York, the terms of which covered the after-acquired property of the mortgagor, that the United States Trust Company has any business in this suit. Deriving and asserting their rights under the contract of August 20, 1884, it is very clear, I think, that both of these mortgagees, like the Atlantic & Pacific Railroad Company, are bound by all of the terms and conditions thereof; for surely they cannot be permitted to assert the rights derived by them under the contract of sale and lease, and at the same time repudiate the conditions and obligations imposed by that contract in connection with those rights. Among those conditions and obligations was the obligation on the part of the vendee and lessee to "promptly pay and discharge all taxes and assessments which should thereafter become due upon said property, or any part of it, or which might become in any wise due or owing in respect to the same."

In the order appointing the original receivers this court directed them, among other things, to pay "all amounts now due from the defendant [the Atlantic & Pacific Railroad Company] on its roads or properties constituting part of its system for taxes and assessments upon the property, or any part thereof"; and in the order appointing the present receiver were similar directions. The evidence in the case, as well as those findings of the special master not excepted to, show that the receivers not only paid from time to time every installment of rental that has become due under the contract of August 20, 1884, but also all of the taxes that have become due on the property therein described, except the portion of the taxes for the year 1887 here in controversy; and the evidence also shows that several of these installments of rental were paid with money borrowed by the receivers upon receivers' certificates authorized to be issued for that purpose by this court, upon representations made by the receivers,

not only showing the necessity of borrowing because of a lack of funds, but also showing that the line of road forming the subject of the contract of August 20, 1884, is an essential part of the Atlantic & Pacific Company's railroad system, and constitutes the only western outlet and inlet by rail for traffic moved over that system, and has been in the continuous and exclusive possession, use, and control of that company, and the receivers of its property, from the time that company first took possession of the property under the contract in question. Those representations by the receivers are, in effect, admitted to be true by the various pleadings filed in the cause by the Mercantile Trust Company and the United States Trust Company, respectively. If, therefore, it be conceded that the contract of August 20, 1884, ever admitted of disaffirmance by the receivers, it has been affirmed over and over again by them; and it is now too late for either of the parties to the present suit to here set up any right of election in respect thereto.

The state laws in respect to taxation entered into and became a part of that contract. In respect to railroad property, the constitution of the state, at the time of the tax assessment and levy in question here, provided that:

The franchise, roadway, roadbed, rails, and rolling stock of all railroads operated in more than one county in this state shall be assessed by the state board of equalization at their actual value, and the same shall be apportioned to the counties, cities and counties, cities, towns, townships, and districts in which such railroads are located, in proportion to the number of miles of railway laid in such counties, cities and counties, cities, towns, townships, and districts. Const. 1879, art. 13, § 10.

The statute of California in existence at the time of the making of the assessment and levy in controversy provided that:

The president, secretary, or managing agent, or such other officer as the state board of equalization may designate, of any corporation, and each person or association of persons owning or operating any railroad in more than one county in this state, shall, on or before the first Monday in April of each year, furnish the said board a statement, signed and sworn to by one of such officers or by the person or one of the persons forming such association, showing in detail for the year ending on the first Monday in March in each year: (1) The whole number of miles of railway in the state. * * * (2) The value of the roadway, roadbed, and rails of the whole railway, and the value of the same within the state. (3) The width of the railway. (4) The number of each kind of all rolling stock used by such corporation, person, or association in operating the entire railway, including the part without the state. (5) Number, kind, and value of rolling stock owned and operated in the state. (6) Number, kind, and value of rolling stock used in the state, but owned by the party making the returns. (7) Number, kind, and value of rolling stock owned, but used out of the state, either upon divisions of road operated by the party making the returns, or by and upon other railways. Also showing in detail for the year preceding the first of January: (1) The gross earnings of the entire road, etc. Pol. Code, § 3664, as amended by act approved March 9, 1883 (St. 1883, p. 65).

Section 3665 of the same Code, as amended by the same act, and also in force at the time of the assessment and levy in question, provides as follows:

The state board of equalization must meet at the state capitol on the first Monday in August, and continue in open session from day to day, Sundays excepted, until the third Monday in August. At such meeting the board must

80 F.—3

assess the franchise, roadway, roadbed, rails, and rolling stock of all railroads operated in more than one county. Assessment must be made to the corporation, person, or association of persons owning the same, and must be made upon the entire railway within the state, and must include the right of way, bridges, culverts, wharves, and moles upon which the track is laid, and all steamers which are engaged in transporting passengers, freights, and passenger and freight cars across waters which divide the road. The depots, stations, shops, and buildings erected upon the space covered by the right of way are assessed by the assessor of the county wherein they are situate. Within ten days after the third Monday of August, the board must apportion the total assessment of the franchise, roadway,. roadbed, rails, and rolling stock of each railway to the counties, or cities and counties, in which such railway is located, in proportion to the number of miles of railway laid in such counties, and cities and counties. The board must also, within said time, transmit by mail to the county auditor of each county, or city and county, to which such apportionment shall have been made, a statement showing the length of the main track of such railway within the county, or city and county, with a description of the whole of the said track within the county, or city and county, including the right of way by metes and bounds or other description sufficient for identification, the assessed value per mile of the same as fixed by a pro rata distribution per mile of the assessed value of the whole franchise, roadway, roadbed, rails, and rolling stock of such railway within the state, and the amount apportioned to the county, or city and county. The auditor must enter the statement on the assessment roll or book of the county, or city and county, and where the county is divided into assessorial townships or districts, then on the roll or book of any township or district he may select, and enter the amount of the assessment apportioned to the county, or city and county, in the column of the assessment book or roll as aforesaid, which shows the total value of all property for taxation either of the county, city and county, or such township or district. On the first Monday in October, the board of supervisors must make, and cause to be entered in the proper record book, an order stating and declaring the length of main track of the railway assessed by the state board of equalization within the county; the assessed value per mile of such railway, the number of miles of track, and the assessed value of such railway lying in each city, town, township, school, and road district, or lesser taxing district in the county, or city and county, through which such railway runs, as fixed by the state board of equalization, which shall constitute the assessment value of said property for taxable purposes in such city, town, township, school, road, or other district; and the clerk of the board of supervisors must transmit a copy of each order or equalization to the city council, or trustees, or other legislative body of incorporated cities or towns, the trustees of each school district, and the authorized authorities of other taxation districts though which such railway runs. All such railway property shall be taxable upon said assessment, at the same rates, by the same officers, and for the same purposes, as the property of individuals within such city, town, township, school, road, and lesser taxation districts, respectively. If the owner of a railway assessed by the state board of equalization is dissatisfied with the assessment made by the board, such owner may, at the meeting of the board, under the provision of section three thousand six hundred and ninety-two of the Political Code, between the third Monday in August and the third Monday in September, apply to the board to have the same corrected in any particular, and the board may correct and increase or lower the assessment made by it, so as to equalize the same with the assessment of other property in the state. If the board shall increase or lower any assessment previously made by it, it must make a statement to the the county auditor of the county affected by the change in the assessment, of the change made, and the auditor must note such change upon the assessment book or roll of the county as directed by the board.

The supreme court of California held in the case of People v. Central Pac. R. Co., 83 Cal. 406, 23 Pac. 303, that it is competent for the legislature to provide the details for the assessment and the apportionment thereof, by the state board of equalization, of

railroad property situated in two or more counties of the state. The scheme thus provided by the laws of California for the assessment of such property so situated is for its assessment by the state board of equalization as a whole, and the apportionment by that board of such assessment among the various counties in which the property is situated in proportion to mileage; and the record in the present suit shows that the assessment for the year 1887 here involved was so made and apportioned, and its validity sustained by the supreme court in an action brought by the state for the recovery of the tax. It was the amount of the tax so assessed and apportioned against the line of road described in the contract of August 20, 1884, that the Atlantic & Pacific Railroad Company thereby agreed to pay. From such amounts, however, the vendor and vendee to that contract subsequently deemed it equitable to deduct a certain percentage, amounting to 14.50 per cent., on account of the rolling stock on that line, which the vendor did not contract to sell or to supply pending the consummation of the sale, and which it did not furnish; and, in accordance with that understanding, the Southern Pacific Railroad Company, in its demand against the receiver, deducted from the amount of the taxes assessed and apportioned by the state board of equalization against the line of road extending from The Needles to Mojave 14.50 per cent. for the rolling stock of that line of road. Of this, neither the Atlantic & Pacific Railroad Company nor either of its mortgagees can complain, since the deduction is in their favor.

Nor does it seem to me that the objections made to the charge for a proportionate share of the penalty, costs, attorney's fees, and interest incident to the litigation concerning the taxes in question are well taken. The evidence shows that Mr. Hazeldine, as solicitor for the Atlantic & Pacific Railroad Company, went with the witness Ryan before the state board of equalization of the state of California, in regard to the assessment for the year 1887, in the endeavor to induce that board to assess the line of road between Mojave and The Needles to the Atlantic & Pacific Railroad Company, and that Mr. Hazeldine submitted an argument in that behalf. There is nothing to call in question the truth of the testimony to that effect, and it finds corroboration in the testimony of Mr. Foulds, one of the attorneys for the Southern Pacific Railroad Company in the tax litigation, to the effect that he had many consultations with Mr. Hazeldine, as the solicitor for the Atlantic & Pacific Railroad Company, in regard to the taxes then in litigation between the state of California and the Southern Pacific Railroad Company, including the taxes for the year 1887. The appearance of Mr. Hazeldine, as solicitor for the Atlantic & Pacific Railroad Company, before the state board of equalization, in respect to the assessment for the year 1887, is sufficient to show his authority to act as solicitor for that company in respect to that matter. The testimony of Mr. Foulds is to the effect that, as such solicitor, Mr. Hazeldine consulted with him, acquiesced in, and consented to, the contest made by the Southern Pacific Railroad Company against the taxes in question. There is nothing in the case tending to

controvert the truth of these statements. Under such circumstances, it cannot be properly held that the litigation by the Southern Pacific Railroad Company in respect to the taxes in question was not, in part at least, by the consent and advice of the Atlantic & Pacific Railroad Company, through its solicitor. If willing to have paid the proportion of taxes apportioned by the state board of equalization against the line of road covered by the contract of August 20, 1884, it could have offered to pay the same, instead of consenting to and advising in respect to the contest, in which event it would, of course, not have been properly chargeable with any portion of the penalty, costs, attorney's fees, or interest incident to the litigation.

The exceptions are sustained, and an order will be entered directing the receiver to allow the amount of the bill in controversy.